## Bank of Montreal, Appellant, v. Mary L. Griffin, Administratrix, Appellee.

### Gen. No. 15,074.

NEGOTIABLE INSTRUMENTS—*how defense of gambling consideration must be established.* A defense to cut off the financial rights of a party, unconnected with the immorality alleged to be inherent in the transaction, must be sustained by tangible proof, and not rest in surmise or conjecture.

BAKER, J., dissenting.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in this court at the October term, 1908. Reversed and judgment here. Opinion filed May 2, 1910. Rehearing denied May 16, 1910.

ROBERT F. PETTIBONE and EDWARD H. TILLSON, for appellant; JOHN S. GOODWIN, of counsel.

GEORGE W. PLUMMER and WHARTON PLUMMER for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal from a judgment of *nil capiat* and for costs. The trial was before the court without the intervention of a jury. There were originally two suits, one on seven and the other on three promissory notes. By the agreement of the parties the suits were consolidated and tried as one case. Asa Griffin, the maker of the notes, dying while the cases were pending and before trial, his administratrix was substituted as defendant. Seven of the notes, for $2,500, $1,000, $1,500, $2,500, $750, $1,000 and $2,000, were respectively payable to P. B. Weare & Co., who endorsed and delivered them to the Bank of Montreal, and three notes for $800 each and one for $900 were payable to the Bank of Montreal. Some of these notes were given in renewal of like notes which had matured. The declarations consisted of the common money counts and special counts declaring on each note separately. Defendant pleaded *non assumpsit* and special pleas to each special count, in which latter pleas it is averred that the notes were given to P. B. Weare & Co. for money won by gaming on the market price of grain at a future time, on dealing in "puts and calls" and in attempting to corner the market on July 1903 delivery of oats, and for margins in carrying on a "blind pool." To these pleas plaintiff replied by traversing the averment that the consideration of the notes was money won by gaming, etc. On the issues so joined the cause proceeded to trial. Plaintiff, prior to filing replications traversing the gambling pleas, filed other replications setting up as matter of estoppel that Asa Griffin in his lifetime represented to plaintiff that the notes sued on were not given for gambling transactions, but for legitimate business dealings, and that no defenses existed to

the notes.   Demurrers to these replications were filed by defendant and sustained by the court.

The defense to the notes sued upon and sustained by the court below, was that the notes were given for money won at gambling on the market price of grain at Chicago, in contravention of section 131 of the Criminal Code, Revised Statute, chapter 38, which notes by section 131 *supra* are rendered void.   Section 136 provides in effect that no assignment of such notes shall cut off the defense of gambling by the maker. As we view this case the solution of the controversy rests in the effect to be given the evidence found in the record, or, in other words, does the preponderating weight of the evidence sustain the defense that the notes in suit were given for money won at gambling on the market price of grain at Chicago and Milwaukee, or in any forms of gambling alleged in any of the special pleas.   We take it that there is no serious contention that the plaintiff bank had any interest in the transactions, whatever they may have been, for which the notes in suit were given, or that plaintiff did not in fact pay money for the notes by crediting the Weare account with the amounts payable, according to the custom of banks.   The facts are controlling of the rights of the parties.   The probative force of the evidence therefore is the important question for our determination.   The legal questions are not seriously controverted.   We do not think the doctrine of estoppel is involved.   If such doctrine could be invoked it certainly could not avail to the extent of defeating the statute *supra* against gambling.   The courts will not permit of any condonation of offenses against the gambling statute by the acts of the parties, as to do so would encourage methods of evasion and destroy the salutary restraint upon gambling intended by its enactment.   The sustaining of the demurrer to the replications seeking to avoid the statute for the reasons alleged as constituting an estoppel, was without error.   Still, evidence

as to statements made by Griffin to O'Grady, the local manager of plaintiff, were admissible, not as evidence working an estoppel, but as bearing upon the claim of plaintiff that the notes were not involved in any gambling transactions. Such evidence was admissible as part of the *res gestæ* as tending to disclose the attitude of the parties toward each other at the time the notes were given. It is the law in this State that notes given for money won at gambling are void even in the hands of innocent holders for value before maturity. If the evidence in this case establishes, by a preponderance of its weight, and not beyond a reasonable doubt, as held by the learned trial judge, that the consideration of the notes was, as alleged in the special pleas, money won by P. B. Weare & Co. of Griffin by gambling on the market price of grain, by buying or selling "puts" and "calls" or by wagering or betting upon a contingent and unknown event, viz. the future price of grain, or for money won by P. B. Weare & Co. from Griffin by gambling on the market price of grain at a future time and buying and selling deals, privileges and options for the sale and purchase of grain for future delivery or other dealings of like character and gambling nature set up in the special pleas, then the finding of the trial judge must be sustained. If a preponderance of the evidence does not so establish, then the defense fails. Should the evidence show that any of the notes are tainted with gambling transactions from the fact, if it be a fact, that notes previously given for any of those involved in this suit were for the consideration of money won by gambling in any of the methods or forms set out in the special pleas, then the notes in suit would be subject to the same defense as those originally given. Without deciding any of the objections made by plaintiff to the admissibility of any of the evidence of defendant, we will treat all the proofs as evidence in the case and from it proceed to decide whether it proves, by its preponderating force, that the notes

sued upon were connected with gambling transactions. The averment of the special pleas is that the consideration was money won by gambling, etc. This averment must be borne in mind in judging of the weight of the testimony and deciding as to its preponderance. Griffin, the deceased, in his lifetime was a farmer who also engaged in speculating in grain in the Chicago and Milwaukee markets, through the firm of P. B. Weare & Co., who as a firm were not doing business in their own name, but in that of the Weare Commission Company, a corporation, on whose books Griffin's accounts were kept. These books were offered as evidence by defendant and largely relied upon to sustain defendant's defense that the notes were given in consideration of transactions which were of a gambling character, and for money won from Griffin by the payees in gambling deals in grain, etc. At the close of all the transactions between Griffin and the Weares a statement rendered to him by the Weare Commission Company showed a balance due Griffin of $21,-951.39. This amount was not paid. Some of the dealings which Griffin had, in fact many of them, were indisputably illegal and contrary to the law of this State and in their nature gambling transactions. "Puts" and "calls" were freely bought and sold for Griffin's account, as appears from the books of the Weare Commission Company, in evidence. Such deals are made illegal by statute and condemned as gambling by the courts. Were the notes in suit traceable to these deals, the statute would render them void, but they are not so traceable and there is no direct evidence connecting any of them with any of these "put" and "call" deals. The contention that they are rests solely in conjecture and surmise. While several witnesses employed in the Weare concerns testify as to "put and call" deals of Griffin involving several millions of imaginary grain, not one of them give any testimony which by any reasonable construction can

be said to connect either of the notes in suit with any one of such illegal deals. That no grain was delivered on any of these "puts and calls" might be assumed. Such deals are not manipulated by delivering the product. Settlements, when made, are in differences as a general custom, and the evidence in the record establishes that in this way most of Griffin's "put and call" deals were settled. We have searched the record, and particularly the accounts offered by defendant, in vain to find any connection between the notes sued upon and gambling and illegal transactions. True it is that a large number of deals were had in grain for future delivery, and nearly four million bushels of oats were involved in a deal in which Griffin, with more than one hundred other persons, was interested. Yet there is no evidence that these deals, large as they were, were for future delivery to be settled upon differences between the market and the contract price. On the other hand, there is testimony showing not only that the contracts for future delivery were regular, but that the actual commodity contracted for was in fact delivered to and received by the concerns through which the Weares did business at different times. Furthermore, there is no evidence that either one of the notes in dispute was given as a consideration for any one of such deals. Neither is there any evidence directly connecting any one of them with any of the deals shown by the accounts in the record. Moreover, no witness has so explained the accounts as to make it possible, even by inference, to connect any of the so-called illegal deals with the notes, by balancing such accounts at any of the dates when any of the notes were given, or at the dates of the notes for which some of the notes in suit were substituted. Whenever balances were so struck they showed that Griffin had considerable sums to his credit. The averment that the consideration of the notes was money won by gaming must be fortified by

evidence of the fact alleged before it is available as a defense. A defense operating to cut off the financial rights of a party, unconnected with the immorality alleged to be inherent in the transaction, must be sustained by tangible proof, and not rest in surmise and conjecture. It is not material for us to decide whether the Weares, or any of their operating companies, were engaged in cornering the oat market in which Griffin was interested. The parties may have contracted to buy all the oats in sight and have failed to complete the purchases for lack of funds. Such fact, if it was a fact, does not tend to prove that the consideration for the notes in suit was money won by P. B. Weare & Co. from Griffin by gambling in oats or any other commodity. The accounts in evidence do not show the deals which are said to constitute the oats corner. Weare's statement around his office that his concerns were running a corner in oats in no way tended to prove that Griffin's notes were given in that transaction or for money won at gambling, etc. As illustrating the weakness of defendant's evidence on the crucial point that the consideration of the notes was money won by gambling, etc., we refer to the evidence of defendant's witness Wolfe. He had no actual knowledge in relation to Griffin's deals except as shown by the books. He was unable to connect any one note with any one transaction or any series of transactions. The utmost he testified along these lines was, that it was the custom to take such notes from customers for margins, but what deals the notes in suit margined, if any, he was unable to say. He finally admits that he had no recollection "regarding any particular transaction", and he undoubtedly told the truth. The testimony may leave in doubt what was the real consideration for the notes, but that situation does not warrant the legal conclusion that the consideration was money won by Weare from Griffin by gambling, etc. Following these accounts, introduced by defendant, to their denouement, we find

that so far from Weare having won money from Griffin by gambling, that Griffin had a credit of $21,-951.39, which is several thousand dollars more than the aggregate of the notes in suit.

The defense interposed has failed, and the finding of the trial judge is manifestly contrary to the preponderance of the evidence. The judgment of the Circuit Court is reversed and a judgment for the principal and interest of the ten notes sued upon will be entered in this court, which on this day is the sum of $19,295.27, and the same is ordered paid in due course of the administration of the estate of Asa Griffin, deceased.

*Reversed and judgment here for $19,295.27.*

MR. JUSTICE BAKER, dissenting.