FREDERICK W. HOFFMAN, Defendant in Error, *vs.* THE
ERNEST TOSETTI BREWING COMPANY, Plaintiff in Error.

*Opinion filed December 17, 1912—Rehearing denied Feb. 5, 1913.*

1. NEGLIGENCE—*when action by a teamster for injuries should go to jury.* In an action by a teamster for a brewing company to recover damages for an injury due to a wheel of the wagon coming off, if there is evidence tending to prove the allegations of the declaration it is proper to submit the case to the jury.

2. SAME—*when the admission of expert evidence is improper.* Opinions of expert blacksmiths to the effect that a wagon wheel would bind if the boxing was too long, or if the wood of the hub projected over the boxing so as to rub against the nut, or if the spindle was too large for the boxing, and that friction would heat metal and cause it to expand, are opinions upon matters of common knowledge which are not a proper subject for expert testimony.

3. SAME—*when permitting alleged experts to theorize as to what caused nut to come off the wagon axle is error.* Where the question whether the nut which came off the wagon the plaintiff was driving came off as the result of a defect in the wagon or in some way for which the defendant was not responsible is close and highly material, it is error to permit expert blacksmiths to theorize and speculate as to the probable manner in which the nut became separated from the spindle.

4. SAME—*when evidence of reputation of maker of wagon is not material.* Where the evidence shows that the wagon plaintiff was driving when a wheel came off had run hot ever since it was in use and that the defendant knew of that defect and attempted to remedy it, it is not error to refuse to admit, at the instance of the defendant, evidence of the reputation of the concern which made the wagon.

5. INSTRUCTIONS—*instruction dealing with but one fact in the case may be refused.* An instruction to the effect that the mere fact that a wheel came off of the wagon plaintiff was driving was not, of itself, evidence of any negligence by defendant, is properly refused, as dealing with but one fact disclosed by the evidence.

CARTER, J., dissenting.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding.

F. J. CANTY, and ROBERT J. FOLONIE, for plaintiff in error.

AMOS C. MILLER, and FREDERIC E. VONAMMON, (LACKNER, BUTZ, VONAMMON & McGREGOR, of counsel,) for defendant in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

This suit was instituted in the superior court of Cook county by Frederick W. Hoffman, the defendant in error, against the Ernest Tosetti Brewing Company, the plaintiff in error, to recover damages for personal injuries sustained by Hoffman while engaged in the performance of his duties as a servant of the plaintiff in error. A trial before a jury resulted in a verdict for $12,500 in favor of the plaintiff. This sum being in excess of the *ad damnum,* the plaintiff remitted $3500, and, after overruling motions for a new trial and in arrest of judgment, the court rendered judgment upon the verdict for $9000 in favor of the plaintiff. The brewing company prosecuted an appeal to the Appellate Court for the First District and the cause was assigned to the branch court, which affirmed the judgment of the superior court. The record has been brought to this court for review by *certiorari.*

At the close of the plaintiff's case, and again at the close of all the evidence, the defendant offered a peremptory instruction directing the jury to return a verdict in its favor. The trial court refused to give the peremptory instruction, and this action of the court is one of the grounds relied upon by plaintiff in error for reversal.

Hoffman had been in the employ of the brewing company as a driver of beer wagons for about six years. On July 3, 1904, while driving south on State street, in the city of Chicago, the nut was lost from the rear axle on the left side of the wagon on which he was riding, permitting the wheel to come off, and as a result thereof Hoffman

was thrown from the wagon seat to the pavement and was seriously and permanently injured. A search was made for the nut, but it was not found. Plaintiff in error contends that there is no evidence in the record showing, or tending to show, what caused the nut to leave the threads of the axle, and that the defendant in error therefore failed to establish that the injury was the result of negligence on the part of plaintiff in error.

The evidence tends to show that the wagon in question was a new one, having been received by plaintiff in error from the manufacturer thereof about six weeks before the accident, and had been used by Hoffman in delivering beer to saloons in the city of Chicago almost every day from the time it was received until Hoffman was injured; that it was not a part of Hoffman's duties to grease the axles or otherwise look after the running gear of the wagons furnished by the brewing company for his use, such work and the inspection of all the wagons of plaintiff in error being left to Herman Bleck, another employee of the brewing company; that Bleck examined all the wagons after the day's work, and each examination of the new wagon used by Hoffman disclosed the fact that all of the axles were hot, the rear axle on the left side being the hottest; that Bleck greased the axles each day the wagon was in use, but after being greased the rear wheel on the left side would not spin; that it would turn on the axle but would stop as soon as Bleck removed his hand; that the other wheels would spin some but not as they should; that after the wagon had been in use about three weeks Bleck told plaintiff in error's foreman that the wagon was "running hot;" that Hoffman overheard the conversation between Bleck and the foreman and notified the foreman that he would not use the wagon again until this condition had been remedied; that the foreman promised Hoffman that he would have the wagon attended to, and directed him to leave it in the yard the next morning; that two or three

days afterwards Hoffman asked the foreman whether the wagon had been repaired and whether it was in condition for use, to which the foreman replied, "Yes, it is in good condition; it is fine;" that Hoffman then used the wagon until he was injured, which was two or three weeks later; that Bleck noticed no change in the condition of the axles or wheels after the wagon had been in the repair shop; that he found the axles hot each night and the rear wheel on the left side would not spin; that on the day of the accident Hoffman made about forty calls on his customers, and on a great many of these occasions he backed the wagon in order to make his deliveries. The mechanic to whom the wagon was sent for repairs after Bleck made complaint to the foreman, testified that he ground down the front axle but did not touch the rear axle. The proof also disclosed that the rear axle of this wagon was at the brewery eight months after the accident. During the trial the attorney for the defendant in error repeatedly requested that this axle be produced in court by plaintiff in error, but the requests were not complied with, the attorney for plaintiff in error responding by saying that at the proper time the axle would probably be produced. This evidence was sufficient to require the issues to be submitted to the jury, and the motion for a peremptory instruction was properly denied. In passing upon this question we have considered only the evidence on behalf of the defendant in error which tended to prove the allegations of his declaration, and we express no opinion whatever as to the preponderance of the evidence.

After showing the above facts the defendant in error called as witnesses three blacksmiths, each of whom testified that he had had several years' experience in repairing wagons and gave expert testimony as to the probable cause of the accident. These witnesses testified that the failure of the wheel to spin after the axle was greased and the nut screwed on tight was because of the fact either

that the boxing was too long and rubbed against the nut, or the wood extended over the boxing and rubbed against the nut, or the boxing fitted too tight upon the axle. They then stated that the friction resulting from either of these causes produced heat and an expansion of the metal heated, and each of them then indulged in theory and speculation as to the numerous ways in which the nut might have become loosened or broken and consequently lost. This testimony was admitted over the objection of the plaintiff in error and its admission is one of the grounds assigned for error, and it is insisted that these questions were not matters for expert testimony.

"Opinion evidence is admissible only upon subjects not within the knowledge of men of ordinary experience, and upon the ground that the facts are of such a nature that they cannot be presented in such a manner that jurors of ordinary intelligence and experience in the affairs of life can appreciate them in their relations and comprehend them sufficiently to form accurate opinions and draw correct inferences from them on which to base intelligent judgments. The opinions of witnesses should not be received as evidence where all the facts on which such opinions are founded can be ascertained and made intelligible to the jury.—*Linn* v. *Sigsbee,* 67 Ill. 75; *City of Chicago* v. *McGivin,* 78 id. 347; *Pennsylvania Co.* v. *Conlan,* 101 id. 93; *Hopkins* v. *Indianapolis and St. Louis Railroad Co.* 78 id. 32." (*Yarber* v. *Chicago and Alton Railway Co.* 235 Ill. 589.) As suggested by plaintiff in error, it does not require an expert to tell a jury that when pressure is taken off a wheel by being jacked up and the wheel will not spin when turned by hand it binds somewhere. As to where this wheel bound was capable of being ascertained, and the whole circumstance could have been made intelligible to the jury by the mere proof of the facts. That the wheel would bind if the boxing was too long, or if the wood of the hub projected over the boxing so as to rub against the

nut, or if the spindle was too big for the boxing, required no expert or opinion evidence to demonstrate. Neither did it require expert or opinion evidence to show that friction will heat metal and cause it to expand. These are facts within the knowledge of every man of ordinary intelligence. Had the testimony of these witnesses been confined to these facts no harm would have resulted, but they were permitted to go further and were allowed to theorize and speculate at great length as to the probable manner in which the nut became separated from the spindle. In the absence of any proof that such a condition existed, they were allowed to speculate as to the result where the wood of the hub projected slightly over the end of the spindle so that the nut came in contact with the wood when screwed up tight, and also, in the absence of any proof as to such a condition, were allowed to speculate as to the result in case the boxing was too long for the spindle and thus came in too close contact with the nut when screwed on tightly. Whether this nut came off as a result of the defect in the wagon or in some unaccountable way for which the plaintiff in error was in nowise responsible was a close question, and the introduction of this opinion evidence was prejudicial. For this error the judgment must be reversed.

It is urged further that there is a variance between the proof and the declaration; that it was error to exclude evidence of the reputation of the manufacturer of the wagon, and that the court erred in refusing instructions offered on behalf of plaintiff in error. We perceive no variance between the proof and the allegations of the declaration. The evidence of the reputation of the manufacturer of the wagon was properly excluded. The proof discloses that this particular wagon was defective, and the attention of plaintiff in error was called to the defect and an attempt made to remedy it. Under such circumstances the reputation of the manufacturer of the wagon could be of no avail.

The first instruction complained of, which was refused, was to the effect that the mere fact that the wheel came off is not, of itself, any evidence of negligence on the part of the plaintiff in error. This instruction dealt with but one fact disclosed by the evidence, and had it been proper to give it, the plaintiff in error might have asked for a series of instructions which would have disposed similarly of every essential fact necessary to complete the chain of evidence which constituted the case of defendant in error. The other instruction was to the effect that if the jury believed the axle in question had been running hot at various times but did not run hot on the day of the accident, then they should disregard the evidence regarding the heating in arriving at their verdict. The whole case of defendant in error was tried upon the theory that the accident resulted from the heating of the axle. While it would not have been error to have given this instruction, plaintiff in error was not prejudiced by its refusal, for the reason that the proposition laid down was so obvious from the whole case as presented to the jury that it was not necessary to instruct the jury upon the subject. In any event, the essential features of the instruction were embodied in the sixteenth instruction given.

We perceive no other error in the record than that pointed out in the admission of the expert testimony. For that error the judgments of the Appellate and superior courts are reversed and the cause is remanded to the superior court for a new trial. *Reversed and remanded.*

Mr. JUSTICE CARTER, dissenting: I think expert testimony was properly admissible on the points referred to in the opinion as being matters of common knowledge.