## Mark Bates, Appellant, v. Estate of Thomas Cronin, Deceased, Appellee.

### Gen. No. 6,083.

1. BILLS AND NOTES, § 373*—*when introduction of note makes prima facie case.* In a claim against an estate on a promissory note where plaintiff introduces the note in evidence and proves that the signature thereto was the genuine signature of the deceased, he makes a prima facie case.

2. BILLS AND NOTES, § 391*—*when holder presumed bona fide purchaser.* One holding a promissory note indorsed in blank must be assumed to be an innocent purchaser for value before maturity.

3. BILLS AND NOTES, § 407*—*when burden of proving illegal con-*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Bates v. Cronin's Estate, 196 Ill. App. 178.

*sideration on defendant.* In an action on a note indorsed in blank brought by the holder, where the defense is that it was given in settlement of differences in trades on the Board of Trade, the burden is on the defendant to establish such defense by substantial proof of the facts constituting alleged defense.

4. BILLS AND NOTES, § 434*—*when evidence inadmissible to show illegal consideration.* In an action on a note indorsed in blank brought by the holder thereof, the defense that the note was void because given by the maker in settlement of differnces in trades on the Board of Trade in transactions with the payee cannot be established by evidence of transactions with which the payee was not connected and of which he was not shown to have had any knowledge.

5. BILLS AND NOTES, § 434*—*when evidence inadmissible to show illegal consideration.* In an action on. a promissory note, dated 1906 and indorsed in blank, brought by the holder thereof, where the defense is that it was given to the payee in settlement of differences in trades on the Board of Trade, evidence that the maker had similar transactions with other members of the Board of Trade about 1901 is inadmissible as being too remote.

6. BILLS AND NOTES, § 434*—*when evidence inadmissible to show illegal consideration.* Evidence in an action on a promissory note examined and *held* inadmissible to show the illegality of the consideration.

7. EVIDENCE, § 107*—*when evidence of telephone conversation inadmissible.* Evidence of a witness as to a telephone conversation which does not state the conversation he held nor his inability to recollect the words used, but merely undertakes to give his opinion of the general result of numerous conversations, is inadmissible, especially where he does not testify that the person with whom the telephone conversation was had, had a telephone nor give its number nor state that he heard the other person call that number and get it.

8. BILLS AND NOTES, § 443*—*when evidence insufficient to show illegal consideration.* Evidence in an action to recover on a promissory note, examined and *held* insufficient to show that the note was given in settlement of differences in trades on the Board of Trade.

Appeal from the Circuit Court of Grundy county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the April term, 1915. Reversed and remanded. Opinion filed October 20, 1915.

ANDREW J. REDMOND, SIMON LA GROU and GEORGE BEDFORD, for appellant.

CORNELIUS REARDON, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Mr. Presiding Justice Dibell delivered the opinion of the court.

On November 15, 1907, Mark Bates filed a claim in the County Court of Grundy county against the estate of Thomas M. Cronin, deceased, based upon a promissory note dated August 3, 1906, for the principal sum of $3,832.25, for value received, signed "Cronin Bros." and "T. M. Cronin," payable to the order of Doyle Brothers and by them indorsed in blank. Two payments of $100 each were indorsed upon said note. On July 15, 1908, said claim was allowed in the sum of $3,770.29 as of the seventh class. The executor appealed to the Circuit Court. In March, 1910, there was a jury trial and the jury disagreed. In October, 1914, upon another jury trial, there was a verdict for defendant. A motion by plaintiff for a new trial was denied, the estate had a judgment for costs and plaintiff below appeals.

Appellant introduced the note in evidence and proved that the signature, "T. M. Cronin" thereto was the genuine signature of Thomas M. Cronin, deceased. This made a case for plaintiff. There was a firm of Cronin Brothers in the hardware business at Morris, composed of Daniel J. and Thomas M. Cronin. Daniel J. Cronin died June 5, 1903. Thomas continued the business and apparently in the name of Cronin Brothers until he died, on July 4, 1907. Doyle Brothers was a Chicago firm, dealing in grain on the Board of Trade, and had done business for Cronin Brothers in 1905 and 1906. The sole defense interposed to this note is that it was given in settlement of differences in trades on the Board of Trade. It is claimed that the note is void and therefore not collectible in the hands of Bates (who must be assumed to be an innocent purchaser for value before maturity), under section 131 of the Criminal Code. The effect of the statute just cited is thus stated in *Schneider v. Turner*, 130 Ill. 28: "All contracts for the purchase

and sale of property with the understanding or agreement of the parties (whether that agreement is expressed on the face of the contract or exists by secret understanding) that the property is not to be delivered or accepted, but the contract satisfied by an adjustment of the difference between the contract and market prices, are mere wagers, or gambling contracts, and void.'' The burden is on the defense to establish such a defense, and the rights of a bona fide holder of such paper, who is not shown to be connected in any way with the immorality alleged to be involved in the transaction, cannot be cut off by mere surmise or conjecture, but there must be some substantial proof of the facts constituting the alleged defense. *Bank of Montreal v. Griffin,* 154 Ill. App. 616.

The defense called Fred J. Blasingham, who testified, over objections by appellant, that he had represented several Chicago parties who dealt upon the Board of Trade and that Cronin had various deals with said parties through him and in no case was any grain ever delivered in his dealings with Cronin, but the transactions were closed by the payment of the profit or loss. He named five different Board of Trade firms for whom he had done that kind of business. Doyle Brothers were not named by him, and he did not profess to know anything about dealings between Cronin or Cronin Brothers and Doyle Brothers. It was not shown that Doyle Brothers had any knowledge of those dealings. It may be that under the authorities, if the evidence had shown that Doyle Brothers had had transactions in grain with Cronin or Cronin Brothers and that they were settled by payment of differences and that Doyle Brothers intended, when the purchases or sales were made, that they should be so settled, and that these transactions were included in this note sued upon, perhaps the intent of Cronin or Cronin Brothers that the trades should be so settled could be shown by evi-

dence of this kind. But all these elements are absent from the proof in this case. This proof was of transactions with which Doyle Brothers were not connected and of which they were not shown to have had any knowledge. As the record stands, this proof was clearly incompetent. It presented an immaterial issue. It was calculated to mislead the jury. Appellant could not be expected to anticipate and be prepared to meet that case. If it was competent, appellant would have had a right to go into the dealings of Cronin or Cronin Brothers with all those Chicago firms and to show that the profits or losses were not so settled and that the parties did not so intend when the trades were made, and this would have been trying a case not before the court. Appellee called Abel D. Osman, who testified, over objections by appellant, that from 1900 to 1906, he was a member of the Board of Trade of Chicago and associated with five commission houses named, and that Cronin dealt with them about 1901 and bought and sold grain on margins and the trades were settled by the payment of differences. Doyle Brothers were not named by him nor was it shown that they knew anything about any of said dealings. For the reasons already stated, this evidence was incompetent and misleading. It was also too remote.

Appellee called James B. McCann, an undertaker, who testified over objections by appellant, to a conversation he heard prior to 1903 between Daniel J. Cronin and one of the Doyle Brothers, which seems to us too remote and not shown to have any relation whatever with the dealings, if any, included in this note. He was also permitted to say that he did not know of any dealings between Cronin and Doyle Brothers except in the buying and selling of grain, and he was allowed to state how the deals were settled by the payment of differences although he did not show that he knew that of his own knowledge or from any information obtained from Doyle Brothers. All of this was incompe-

tent. He was also permitted to testify, over objection, that he thought he was familiar enough with Cronin's affairs to know if Cronin had any other deals with Doyle Brothers. This opinion that he thought, if there had been other deals between Cronin and Doyle Brothers, he would have known of it was incompetent. He should have stated what his relations with Cronin were and what facts placed him in a position to know of Cronin's dealings with Doyle Brothers, and it would then have been competent for him to testify that he did not know of any such dealings in relation to buying and selling grain except such as were settled by the payment of differences, and it should have been left to the jury to decide whether or not he was sufficiently familiar with Cronin's affairs to have known if there. had been other dealings. He was permitted to decide that which should have been left to the jury. *Illinois Cent. R. Co. v. People,* 143 Ill. 434; *Hellyer v. People,* 186 Ill. 550; *Illinois Cent. R. Co. v. Smith,* 208 Ill. 608; *Kellyville Coal Co. v. Strine,* 217 Ill. 516; *Yarber v. Chicago & A. Ry. Co.,* 235 Ill. 589; *Springfield & N. E. Traction Co. v. Warrick,* 249 Ill. 470; *Hoffman v. Ernest Tossetti Brewing Co.,* 257 Ill. 185.

Daniel G. Cronin testified in behalf of the estate that he was the executor of the estate; that he was employed in the store of Thomas M. Cronin and succeeded him in the hardware business; that he found among his uncle's papers a statement from Doyle Brothers, which he produced, dated January 25, 1906, relating to transactions on and before that date. He testified that the deals of his uncle with Doyle Brothers in the summer of 1906 amounted to several thousand bushels and that he gained that information from said statement which, of course, was impossible. He was allowed to tell of various telephone conversations that his uncle had with some one whom he understood to be Doyle Brothers. The question of the competency or incompetency of conversations over a telephone has

been discussed by the Supreme Court of this state in *Miles v. Andrews,* 153 Ill. 262; *Fitzgerald v. Benner,* 219 Ill. 485; and *Godair v. Ham Nat. Bank,* 225 Ill. 572. The same subject has been treated by this court in *Rock Island & P. Ry. Co. v. Potter,* 36 Ill. App. 590; *Snively v. Colburn,* 78 Ill. App. 93; *Galt v. Woliver,* 103 Ill. App. 71; *Rogers Grain Co. v. Tanton,* 136 Ill. App. 533; *Pumphrey v. Giggey,* 150 Ill. App. 473; *Wicks v. Wheeler,* 157 Ill. App. 578; and *Tripp v. Rockford Elec. Co.,* 186 Ill. App. 379. We also call attention to the views expressed by the Appellate Court for the first district in *Rueckheim Brothers v. Servis Ice Cream & Candy Co.,* 146 Ill. App. 607, and *Gallagher v. Singer Sewing Machine Co.,* 177 Ill. App. 198. There are some Appellate Court decisions in this State not in harmony with the foregoing, but we must regard them as overruled. It must be considered as established for this State that, if a person places himself in connection with a telephone system through an instrument in his office, he invites communications in relation to his business over such telephone, and that conversations so held are admissible in evidence wherever a personal interview by a customer with an unknown clerk in an ordinary shop would be admissible in relation to the business there carried on, and this without an identification of the voice at the telephone. If the witness had testified that Doyle Brothers had a telephone and its number, that he heard his uncle call that number and get it, and heard any particular conversation following by his uncle with some unknown person purporting to answer the telephone and concerning business dealings between his uncle and Doyle Brothers, he would have been competent to testify to so much of the conversation as he heard, and if he could not give the exact words of the conversation, but remembered the substance, he would be permitted to testify to that. This witness did not testify that Doyle Brothers had a telephone, that he

knew its number or that he heard his uncle call for that number. All that he testified was that he assumed his uncle was talking with some one in the office of Doyle Brothers. For all that his testimony shows, it may have been with some one of the commission houses named by the witnesses Blasingham and Osman. He did not state the conversation he heard. He did not state that he was unable to recollect the words. He did not separate one conversation from another. He merely undertook to give his opinion of the general result of numerous conversations which he heard. We are of opinion that this evidence as given was incompetent. With this evidence excluded there is practically nothing in this record to show that this note was given in a settlement of differences growing out of gambling in grain.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*