# John Howard Williams, Appellant, v. Otto Louis, Appellee.

## Gen. No. 6,355.

1. AUTOMOBILES AND GARAGES, § 3*—*when evidence insufficient to show negligence of driver of automobile colliding with horse and wagon.* Evidence *held* to warrant the finding that the defendant was not guilty of negligence in not stopping or not turning his automobile to the right of the road because of a deep ditch on that side preventing him from so doing, in an action to recover damages for injuries sustained from a collision between such automobile and plaintiff's horses and wagon.

2. AUTOMOBILES AND GARAGES, § 2*—*when driver of automobile is required to turn to right.* Section 16 of the Motor Vehicle Law (J. & A. ¶ 10016), requiring an automobile to seasonably turn to the right of the center of the track of a highway in passing another vehicle, announces a general law of the road practically uniform in the United States, and the rule applies regardless of the character of the vehicle, but not regardless of the character of the road, under sections 140, 145 of chapter 121 [Cal. Ill. St. Supp. 1916, ¶ 10000(140), (145)], and the driver of an automobile is required to turn to the right only when it is reasonably practicable to do so.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. Automobiles and garages, § 3*—*when instruction on contributory negligence of driver of team is not erroneous.* An instruction that if the jury believed that the plaintiff drove his horses into or in front of the defendant's automobile and was negligent in so doing whereby a collision occurred and plaintiff was injured they should find for the defendant, *held* not erroneous, in an action to recover damages for such injuries.

4. Evidence, § 400*—*when expert testimony is inadmissible.* Expert testimony on matters of common knowledge is inadmissible.

5. Appeal and error, § 1475*—*when improper admission of expert testimony is harmless error.* The improper admission of expert testimony on matters of common knowledge, where it is not in conflict with common knowledge, as testimony on the effect of getting the front wheel of an automobile into a ditch, the slopes of which were covered with blue grass and which were deep, is harmless error.

Appeal from the Circuit Court of Putnam county; the Hon. Clyde E. Stone, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed February 10, 1917.

George W. Hunt, Clarence W. Heyl and Harry C. Heyl, for appellant.

Fred W. Potter and McDougall & Chapman, for appellee.

Mr. Justice Carnes delivered the opinion of the court.

John Howard Williams, the appellant, was in the evening after dark driving south on a public highway in the county of Putnam in a light spring wagon drawn by two horses. The appellee, Otto Louis, a minor, was coming north on the same highway in a Ford automobile accompanied by his mother. There was a bridge ten to fourteen feet wide over a ravine between them. Appellant saw the car approaching and hurried across the bridge to a point in the highway three or four rods south thereof, where there was a collision in which ap-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

pellant and one of his horses were injured. He
brought this action on the case to recover for that in-
jury and filed a declaration of two counts, the first
charging general negligence in the operation of the
automobile; the second charging failure on the part of
appellee to observe the requirement of section 16 of
the Motor Vehicle Law (J. & A. ¶ 10016) in not sea-
sonably turning to the right of the center of the beaten
track of the highway so as to pass without interfer-
ence. (Chapter 121, Hurd's St. 1913, section 269p.)
There was a judgment on a verdict for the defendant,
from which this appeal is prosecuted.

It is first urged that the judgment is manifestly
against the weight of the evidence; that appellee was
under the first count guilty of negligence in not stop-
ping or turning out for appellant, and that he was cer-
tainly guilty under the second count in not turning
from the center of the beaten path of the road. The
proof shows that he did not turn much, if any, from
that path.

That beaten track at the point in question was near
the east side of the road. There is a conflict of evi-
dence whether there was room to the east so that ap-
pellee could turn in that direction (to the right) from
the beaten track without much danger of sliding into
a ditch or depression at that side of the road, and thus
upsetting his car. Appellee's theory supported by
evidence introduced by him is that there was a ditch
there with sides covered by blue grass; that the ditch
deepened as it approached the bridge, and had he
turned to the right the wheels of his car would have
gone into that ditch and he would not, because of the
deepening of the ditch in the direction in which he was
running, have been able to get upon the road and cross
the bridge. The verdict must be presumed to rest on
a finding that such was the fact. The evidence suffi-
ciently supports such finding to forbid our disturbing

the judgment on that ground. There is no question but that there was ample room in the highway for appellant to keep clear of the car by turning safely to the right entirely out of the beaten track. Because the car carried lights, and appellant did not, he naturally saw the car before its occupants saw him, and had he not acted on the assumption that the car must turn to the right from the beaten track he could easily have passed in safety. We think the jury were warranted in finding appellee not guilty under the first count.

But appellant insists that the court misdirected the jury on the law applicable to the second count. They were, at the instance of appellant, instructed in the language of the statute above referred to as to the duty of a person operating a motor vehicle on a public highway to seasonably turn to the right of the center of the beaten track so as to pass without interference any other person met riding, or driving a vehicle. But at the instance of appellee the court also instructed the jury "that while the statute provides that whenever any persons traveling in carriages on a public highway shall meet, each one shall seasonably turn his or her carriage to the right of the beaten track so as to permit the carriage of the other party to pass without interfering or interrupting such passage; yet the statute further provides that where it is impracticable from the nature of the ground for the driver of the carriage or wagon to turn to the right of the beaten track, he shall not be compelled to do so. And the jury are instructed that if they shall believe from the evidence that the character of the highway where the plaintiff and defendant were traveling at the time of the accident in question was such that it was impracticable from the nature of the ground for the defendant to turn his automobile to the right of the beaten track, then he was not under any obligation so to do; and that in such case, if it was practicable at the place in ques-

tion for the plaintiff to have turned his carriage out of the beaten track so as to have avoided conflict or contact with the automobile so driven by the defendant, then it was the duty of the plaintiff so to do.'' This instruction was based on section 145 of the same chapter of Hurd's Statutes [Cal. Ill. St. Supp. 1916, ¶ 10000(145)], which requires a person traveling with any carriage to turn to the right of the beaten track on meeting another carriage, and expressly provides that it shall not be construed to apply to a case where it is impracticable from the nature of the ground to do so. Section 140 of the same Act [Cal. Ill. St. Supp. 1916, ¶ 10000(140)] provides that the term ''carriage'' shall include, among other things, automobiles; therefore, we have in our ''Roads and Bridges'' act the statute first mentioned requiring automobiles to turn to the right without any provision or qualification, and the other statute requiring automobiles to turn to the right if practicable to do so. Appellant argues that the second-mentioned statute cannot be construed as modifying the first, and appellee says that the statutes should be read together, leaving the law as held by the court in the instruction above mentioned. The question of law for determination here is whether the driver of an automobile, regardless of the condition of the road on which he is driving, is compelled to turn to the right in meeting a vehicle or suffer the charge of negligence. We do not think the latter construction can be given to section 269p of the statute (J. A. A. ¶ 10016), if standing alone. It is a matter of common knowledge that because of obstructions, temporary or permanent, it is sometimes impossible and often impracticable to turn to the right from the beaten path in meeting a vehicle, and it sometimes becomes necessary, because of the nature of the load and the vehicle that one party should entirely leave it in passing. We take notice of this well-known condition and assume

the Legislature enacted the statutes with it in view. It is also matter of common knowledge that the public in the use of highways do not assume that the law imperatively requires the driver of a vehicle to turn to the right regardless of conditions. The statute announces a general law of the road practically uniform in the United States. It is said to be the reverse in England. (37 Cyc. 270.) As a rule a traveler is liable for accidents caused by failure to keep to the right if that failure was the proximate cause of the accident; otherwise not. Id. But a reference to the authorities there cited shows that the law has not been regarded so arbitrary as to be literally applied without reference to the kind of vehicle and character of the road. It is the duty, in any event, of each traveler to try to avoid accidents. A situation might present itself where a literal observance of the rule would cause one that might easily be avoided by turning to the left. The court in *Blakeslee's Exp. & Van Co. v. Ford*, 215 Ill. 230, 235, said:

"We do not hold that the failure of the defendant to keep on the right side of the boulevard was negligence *per se*, but that it was a circumstance which tended to prove negligence."

We find in Shearman & Redfield on Negligence, sec. 649:

"It is a universal custom * * * in America for travelers, vehicles and animals under the charge of man to take the right hand of the road when meeting each other, if it is reasonably practicable to do so; and this rule * * * is enforced by statute in many States, so far as it relates to travelers in vehicles or on horseback."

We are of the opinion that the words "reasonably practicable" used in the above-quoted text must be read into section 269p, whether section 145 has that effect or not. In other words, that the rule of reason must be applied in construing this statute. In that

view of the law there is not material error in the instruction complained of.

The court also instructed the jury if they found from the evidence that the plaintiff drove his team of horses into the automobile, or in front of the automobile operated by the defendant, and that such conduct in so driving his horses was negligence on his part, that caused the accident, then their verdict must be for the defendant. It is urged that this instruction was error. There can be no question that the burden was on the plaintiff to prove ordinary care on his part. Both he and the defendant were familiar with the road. There was a fair question for the jury whether the plaintiff was exercising due care at the time in question. We see no substantial reason for criticising the language of the instruction, and the verdict should have been for the defendant if the jury believe the plaintiff was negligent, and that his negligence materially contributed to the accident; therefore it was not so strong for the plaintiff as it might properly have been. It was not error.

One of plaintiff's witnesses, after describing the condition of the ground at the place in question and showing that he was familiar with the operation of automobiles, was permitted to testify as to the effect of getting the front wheel of an automobile into a ditch where the slope is covered with blue grass and in the condition of the ditch that the witness had described. It is objected that this amounted to the introduction of expert testimony on a subject that is known to the common individual, and *Hoffman v. Ernest Tosetti Brewing Co.*, 257 Ill. 185, is cited in support of the proposition that expert testimony should not be so received. It may be true that what this witness testified to was something within the common knowledge of the jury. A jury would now understand the effect of driving an automobile wheel onto a sideling and slippery

surface better than they would five years ago. Five years hence it will probably be as unnecessary and improper to offer expert testimony of how and when an automobile might tip over as it would be now to introduce such expert testimony as to a farm wagon. If the jury were able to judge for themselves of the matter concerning which this witness testified, there was nothing in his testimony to conflict with such general knowledge. While it is error to introduce expert testimony on matters of common knowledge, it is harmless error if the so-called expert testimony is not at all in conflict with common knowledge. It might be technical error to introduce expert testimony that a heavy body thrown into the air would fall to the ground, but it would be harmless error. This testimony complained of fell within that class.

We find in the record no substantial error of law. The verdict was right if, at the time in question, appellee was in the exercise of ordinary care, or if appellant was guilty of negligence that contributed to the accident and injury. It was a situation familiar to a country jury and one of which they were well qualified to judge. We see no reason for reversing a judgment based on their conclusion as to the facts. The judgment is affirmed.

*Affirmed.*