SONNY DAVID STANLEY, a minor by JUANITA STANLEY, His Mother and Next Friend, Plaintiff-Appellee, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant-Appellant.

(Nos. 54720, 55721 cons.; ▮▮▮▮▮▮▮▮)

First District—January 22, 1973.

964

Pretzel, Stouffer, Nolan & Rooney, of Chicago, (Howard C. Sorensen and Joseph B. Lederleitner, of counsel,) for appellant.

John D. Hayes, of Chicago, for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Sonny David Stanley, was awarded $40,000 by a jury for injuries sustained when he was struck on the head by a baseball bat while in a playground in which the defendant, Board of Education, was conducting its summer recreational program. The defendant contends the following: it was entitled to a directed verdict; an improper instruction was given; it was prejudicial error to admit certain testimony of a purported expert.

During the afternoon of July 16, 1963, the plaintiff was playing either a game of fastpitch or "pinners" (bouncing a ball against the wall), in the Yates Elementary School yard where the defendant, Board of Education, was conducting its summer recreational program which was to provide a place during the day for children where there would be supervised activities. Brochures or flyers were distributed explaining the program. The program at this school which included both outdoor and indoor activities was under the direction of Coach Miesco Kowalczyk, a physical education teacher, who had the responsibility of running the program and supervising his assistant junior leaders. One of the outdoor activities was a game called fastpitch baseball. In that game one person would throw a rubber ball trying to get it into a strike zone marked off on the side of the wall; the batter would, of course, try to hit the ball. It was a policy of the school to supply bats for the baseball game, but only softball bats.

Between 12:30 and 1:00 P.M., during the lunch hour, the playground

was to be supervised by Jerry Iversen, a seventeen-year-old junior leader. Concededly, it was his responsibility to see to it that the younger children were not playing too close to the older boys. Iversen had been a pupil of Kowalczyk's for a considerable length of time, and the coach believed him qualified to supervise the playground activities.

Iversen could not recall if he had checked the area prior to the occurrence. He said he was handing out and setting up equipment at the time of the occurrence. Hobart Stanley, a brother of the plaintiff, testified that Iversen was shooting baskets some distance away from the occurrence at the time his brother was injured.

Hobert also testified that there were three or four fastpitch games going on in the area at the time of the occurrence. Previously he, the plaintiff and some other boys were playing fastpitch next to Joseph Lehner when someone let the bat fly the first time. Hobart said he was afraid that someone would get hurt so he and the other players, including the plaintiff, moved.

Lehner, Roy Brown, Roy Lawniczak, and John Larson were all playing fastpitch together at the time of the occurrence. Lehner stated that he took a bat from the school's storeroom. He had the general permission of the coach to take equipment. Lehner, who was sixteen at the time of the occurrence, testified that after four boys started their game of fastpitch baseball the plaintiff was asked to move. Lehner stated that the plaintiff did move but returned after their fastpitch game had started; when he returned he was playing about 25 to 30 feet from the fastpitch game.

The day was warm and Lehner, who was batting, said his hands were very moist. The bat he was using had no tape. There was a league bat around. If the bat he was using was a league bat, it was not the school's, but if it was a softball bat, then it was the one he had taken from the school's storeroom. The knob around the handle of the bat he was using was frayed. He was swinging very hard when the bat left his hands and ricocheted off the building striking the plaintiff in the head.

Roy Lawniczak testified that the bat they were using was not a brand new bat. It was a softball bat upon which the knob handle was about half worn away. There may have been a little tape left on the handle. He wasn't sure if the bat was his or if it belonged to the school.

John Larson didn't know who owned the bat or where it came from, but he did remember that the handle had no tape on it.

Coach Kowalczyk explained that having tape on the bats made the use of the bats safer, but the tape sometimes wore off or was peeled off by the children. The coach said that when the knob is worn off the handle the bat is discarded. The bat will lose its knob when it is continually dropped on the blacktop surface. After the occurrence the coach saw the

bat that he believed the plaintiff was struck by. He couldn't remember if the bat was taped but he did think it had a knob on it. He said it was a "like new" softball bat. The students were discouraged and prevented from bringing or using league bats in the schoolyard. The bat he saw was not owned by the Board of Education. At a pre-trial deposition he had said to the best of his recollection he believed the bat was owned by the Board of Education. In his opinion a safe distance between batters, spectators, or someone playing another game would be about 25 feet, but, if teenagers are playing fastpitch baseball that eight-year-old children should be perhaps 50 feet away. He did not like to see eight-year-olds playing at the same time "in the vicinity" of teenagers.

Frank Jambois was called as an expert witness in playground supervision and game safety. His qualifications included a bachelor's degree in physical education, a master's degree in educational training with a minor in physical education and past Director of Athletics for the Chicago Athletic Association for seven years; he had also taught physical education and supervised adults and children. He was familiar with the game called fastpitch as well as other playground games. His training and experience had included the supervision of games with bats and the safety factors involved.

In answer to a hypothetical question Mr. Jambois stated that 30 feet was not a safe distance between an older batter playing fastpitch baseball and another group of youngsters playing ball. This game constitutes some danger at any time when there are youngsters in the area.

The plaintiff alleges in substance that the defendant was negligent by supplying a defective bat, failing to warn the plaintiff and failure to supervise.

The defendant argues that there is no "probative" evidence that the bat that struck the plaintiff was a school bat or was defective, the plaintiff was warned and, since no supervision could prevent a flying bat from ricocheting off a school wall, the defendant's conduct was not a proximate cause of the injury.

Lehner testified that he had taken a bat from the school storeroom; if it was a softball bat that flew from his hands it was a school bat. Lawniczak testified that Lehner was using a softball bat. Lehner and Larson both testified there was no tape on the bat; Lehner and Lawniczak testified that the knob on the handle was partly worn away. Kowalczyk testified that he put tape on the bats to make them safer and when the knob is worn off the handle the bat is discarded. From this evidence a fact finder could reasonably conclude that the bat used belonged to the defendant and was "defective" in the sense that it was unsafe.

■■ Both Lawniczak and Lehner testified that they had told the plaintiff

to move. The plaintiff's brother testified that he, the plaintiff and some other boys moved because once before a bat was thrown. This evidence, the defendant argues, obviates the duty to warn because the circumstances were known, appreciated and obvious, citing *Bakovich v. Peoples Gas Light & Coke Co.*, 45 Ill.App.2d 182, 195 N.E.2d 260.

The *Bakovich* case is not analogous to this case. In that case a plaintiff doing excavation work was injured when a fellow employee operating a power shovel broke into a gas main of the defendant. The evidence showed that the employer had been provided a composite blueprint of all existing utilities which showed the exact location of the main. The court held in reversing a judgment for the plaintiff that the defendant owed the plaintiff no duty to protect him from the negligence of his employer, and that it was the duty of the employer, not the defendant, to notify the plaintiff. The defendant had done all it could reasonably be expected to do.

In this case the plaintiff was eight years old at the time of the occurrence and his brother twelve. In *Miller v. Veterans of Foreign Wars of U.S.*, 56 Ill.App.2d 343, 347, 206 N.E.2d 316, the court said:

> " 'The known characteristics of children should be taken into consideration in determining whether or not sufficient care for the safety of a child has been exercised in a particular case. Accordingly the fact that children cannot and do not ordinarily exercise the same degree of prudence and care for their own safety as adults imposes on those by whose acts or omissions a child may be injured the obligation of exercising more vigilance and caution than might be sufficient with respect to an adult and conduct which might reach the standard of ordinary care with respect to an adult might in the case of a child amount to negligence or even gross negligence.' "

It is a known characteristic of many eight-year-old boys to ignore the directions of sixteen-year-old boys whom they see to be but older members of the same class. Indeed, it is not unheard of that eight-year-olds under circumstances similar to this case have rather heatedly insisted that the sixteen-year-olds should move instead. An admonition, instruction or warning coming from one recognized as having authority, as Iversen did, could well be regarded with more docility than one coming from Lehner or Lawniczak. In any event, the evidence presented a factual question, and the board may not, as a matter of law, avoid its duty because some volunteer may have acted.

■■ The defendant relies in support of its argument that the failure to supervise was not the proximate cause of the injury on *Nestor v. Board of Education of the City of New York*, 211 N.Y.S.2d 975, 28 Misc.2d 70,

and *Benedetto v. Traveler's Insurance Co.*, 172 Southern 2d 354. The *Nestor* decision, which was a trial court memorandum, set aside a jury verdict. The plaintiff was one of 45 boys playing in a schoolyard; the teacher was distributing milk in a doorway approximately 30 feet from first base. The plaintiff hit a high fly a short distance from home plate. Instead of remaining there, he ran out to catch the ball. Another boy who had been standing with a bat in his hand between the plate and first or third base swung at the descending ball and struck the plaintiff. The court held that even if the defendant exercised constant supervision it could not be expected to anticipate what happened.

In *Benedetto v. Traveler's Insurance Co.*, the twelve-year-old plaintiff was sitting along the third base line some eight to eleven feet to the rear of a right-handed batter. Another girl batted a ball and dropped or threw the bat. No one knew how it was thrown or in what manner it struck the plaintiff. The evidence disclosed that one of the supervising nuns had told some of the girls who were sitting where the plaintiff was to move and that they had moved. The Court of Appeal of Louisiana held that "no amount of supervision could have prevented" the accident and that the plaintiff had assumed the risk or was guilty of contributory negligence.

Unlike those two cases we are unprepared to say that no amount of supervision could have prevented the accident in this case. More in point are the cases that *Nestor* sought to distinguish, where awards were upheld: *Lopez v. City of New York*, 4 A.D.2d 48, affirmed 4 N.Y.2d 738, 148 N.E.2d 909; *Decker v. Dundee Central School District*, 4 N.Y.2d 462, 151 N.E.2d 866. In the *Decker* case a ten-year-old girl was excused from the cafeteria and told she could go out and play. She and her companions went to the bleacher stands in the playground where a number of baseball games were in progress. In an attempt to jump from the top tier she was injured. She and her friends had previously jumped from the top tier. The supervising teacher was 1000 feet away in a driveway next to the school. The Court of Appeals held: "The jury could reasonably infer that, had there been adequate supervision in the past, the danger would have come to the attention of some person in authority, and steps taken to prevent its repetition." p. 464.

In *Reid v. Young Men's Christian Association of Peoria*, 107 Ill.App.2d 170, 246 N.E.2d 20, the eleven-year-old plaintiff was in the defendant's gymnasium participating in the sports program. He had been designated a Junior Leader; he was to assist the instructor; among his duties was the care and disposition of equipment. He was putting equipment in a storage room when he heard his name called from the gymnasium. A circular running track was located about 24 feet above the gymnasium floor.

Another boy who had been requested by the instructor to bring a punching bag from the upper track to the gymnasium floor dropped the bag on the plaintiff. No instructions, advice or warnings were ever given against dropping objects from the running track. At the time of the occurrence the instructor was either out of the gymnasium or, coincidentally with the facts in this case, shooting baskets at one end of the gym.

The defendant argued that its motion for a directed verdict should have been granted because there was no particular duty to supervise under the circumstances because the injury was not foreseeable. The defendant claimed also that the plaintiff's injury was not shown to have been the proximate cause of an act of omission or negligence on the defendant's part.

The court said:

"In our opinion these issues were appropriately submitted to the jury and there is ample evidence supporting its verdict in favor of plaintiff. It is admitted that at the time of this incident the instructor was not supervising, and that such inattention occurred at a time when he had directed one of his young assistants to bring the punching bag down from the upper level. Conflicting inferences may be drawn from these circumstances, including the inference that plaintiff's injury was the foreseeable and proximate result of inadequate supervision." p. 176.

Here, it was conceded that it was Iversen's duty to make sure that the smaller children were not playing close to where the teenagers were playing. He did not do so. Evidence was presented which, if believed, would establish that the defendant made available equipment which is ordinarily discarded because it was not as safe as it should be and that Iversen, instead of supervising, was playing basketball. Kowalczak himself testified that in his opinion perhaps 50 feet would be a safe distance between teenagers playing fastpitch and eight-year-olds. We conclude that the evidence presented issues of fact which were appropriately submitted to the jury.

■■ The defendant contends that the trial court improperly gave instruction number 25 because it is "prolix and unsupported by the evidence." No objection on the grounds of prolixity was made at the conference on instructions and it is, therefore, waived. *Henry v. Robert Kettell Construction Corp.*, 82 Ill.App.2d 420, 226 N.E.2d 89.

■ The instruction complained of is the issue instruction, Illinois Pattern Instruction Number 20.01 as modified. It contains in twelve separate charges what amounts to the three different general allegations of negligence. Each has sufficient basis in the evidence to be passed on by the jury. The court did not err in giving this instruction.

■■  The defendant now contends that Jambois should not have been permitted to give an opinion for two reasons: (1.) he was not qualified, and (2.) the safe distance between the groups of boys was not a proper subject for expert opinion. The first ground was not raised by the defendant at the trial and may not be raised now. (*Abramson v. Levinson*, 112 Ill.App.2d 42, 43, 250 N.E.2d 796.) Moreover, whether a witness has been qualified as an expert is left to the broad discretion of the trial court. (*Taylor v. Carborundum Co.*, 107 Ill.App.2d 12, 246 N.E.2d 898.) The trial court did not abuse his discretion in permitting the witness to testify. Parenthetically, we note that it was the trial judge that first raised the question of the qualifications of the witness; the plaintiff's attorney then questioned the witness further about his background and training.

The second ground for objection to Jambois' testimony is the assertion that the "opinion must be beyond the ken of the jury." The only case cited in support of this ground is *Abramson v. Levinson*, 112 Ill.App.2d 42, 250 N.E.2d 796. That case involved the recurring question of the admissibility of testimony of "reconstruction experts" in automobile accident cases. (See *Thomas v. Cagwin*, 43 Ill.App.2d 336, 193 N.E.2d 233; *Miller v. Pillsbury Company*, 33 Ill.2d 514, 211 N.E.2d 733; *Ficht v. Niedert Motor Service, Inc.*, 34 Ill.App.2d 360, 181 N.E.2d 386; *McGrath v. Rohde*, 53 Ill.2d 56.) The Appellate Court held that the fact that eyewitness testimony was available did not necessarily render the opinion of a reconstruction expert inadmissible. The court set four criteria to be met before such opinion evidence could be received. One of the criteria was as follows: "The area of inquiry should require the employment of principles of physics, engineering or other science or scientific data beyond the ken of the average juror." (p. 50.) However, in *Miller v. Pillsbury Co.*, 33 Ill.2d 514, 516, 211 N.E.2d 733, the Supreme Court said in another case involving the testimony of a reconstruction expert:

> "While there has been a reluctance to permit expert testimony on many matters on the basis that it invades the province of the jury, confuses the issues and usurps the function of the jury, the trend is to permit expert testimony in matters which are complicated and outside the knowledge or understanding of the average person, *and even as to matters of common knowledge and understanding where difficult of comprehension and explanation.* The jury still may accept or reject such testimony. Thus, in the field of reconstruction of motor vehicle accidents, where there is physical evidence present sufficient to provide the basic data needed, an expert may analyze and reconstruct the occurrence." (Emphasis added.)

It must be kept in mind that both cases emphasize the particular type of expert involved.

Judging from the defendant's brief and motion for new trial he seeks to invoke the rule providing it is error to receive the opinions of experts on matters of common knowledge. Thirty years ago two text writers described the rule as outmoded. (King and Pillinger, Opinion Evidence in Illinois, 1942, p. 38.) As the writers point out:

"Of course, one cannot conceive of a court which would permit expert witnesses to be called and qualified to testify that two plus two equals four. But the obvious power of the court to prevent waste of its time in this manner was once perverted into a fixed rule which made it reversible error for a court to admit expert opinions in a case where they were not necessary.

Who is harmed by an expert opinion within the realm of common knowledge? Surely not the jury who must perforce nod their heads in agreement or know by their common knowledge that the opinion is not correct. How can the admission of such an opinion, even though it be unnecessary, rise to the height of reversible error? The courts appear finally to have reached the conclusion that it cannot; but is at most harmless error.

\* \* \*

The original theory of the common knowledge rule that expert testimony was not admissible except in cases where a jury was incapable of drawing a proper conclusion is belied by many cases where both lay and expert opinions are admitted on the same subject matter. Opinions as to sanity, handwriting, speed, intoxication, and many other cases illustrate this situation."

The first case reversed under the rule was in 1873, *Linn v. Sigsbee*, 67 Ill. 75, the last in 1913, *Hoffman v. Tosetti Brewing Co.*, 257 Ill. 185, 100 N.E. 531. Some later cases have held it harmless error: *Williams v. Louis*, 204 Ill.App. 62; *Armstrong v. Chicago & W.I.R.R. Co.*, 350 Ill. 426, 183 N.E. 478.

Dean Wigmore criticized the rule and urged that the "only true criterion is: On *this subject* can a jury from *this person* receive appreciable help?" (Wigmore on Evidence, Third Edition, Volume 7, § 1923.) He quoted *Taylor v. Town of Monroe*, 43 Conn. 36:

"The true test of the admissibility of such testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders

their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue."

Other more recent legal writers have concluded that the trend of the cases is away from the rule in its absolute form, at least, and correctly so. (Ladd, Expert and Other Opinion Testimony, 40 Minn.L.Rev. 437, 443; McCoid, Opinion Evidence and Expert Witnesses, 2 U.C.L.A. L. Rev. 356, 362-363; McCormick on Evidence, Second Edition, pp. 30-31.) Rule 702 of the recently proposed Federal Rules of Evidence provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The editors of McCormick on Evidence conclude "presumably the judge would have a broad area of discretion under this rule." p. 31, n. 67.

In *Swanson v. LaFontaine*, 238 Minn. 460, 57 N.W.2d 262, a plaintiff was injured when wind blew the hood off an automobile. The issue was whether the hood was properly locked. The trial court excluded the testimony of the automotive expert that it would be impossible for the wind to remove the hood without damaging the locking attachment if the hood had been properly locked. The evidence showed that there was no damage to the locking attachment. The trial court ruled on the grounds that the matter was not a "proper subject of expert testimony." The Supreme Court of Minnesota reversed, holding that since the testimony would likely have aided the jury in determining the truth of the fact issues involved this type of testimony was proper. See also *Woyak v. Konieske*, 237 Minn. 213, 54 N.W.2d 649; *cf. Hanson v. Christensen*, 275 Minn. 204, 145 N.W.2d 868.

In *Swartley v. Seattle School Dist. No. 1*, 70 Wash.2d 17, 21, 421 P.2d 1009, a twelve-year-old boy was killed when sheets of plywood which were stacked in a storage room slipped or fell on him. An expert testified that in his opinion the method of storage of the vertical piles of plywood was not a safe manner of storage in an area accessible to junior high school students. The Supreme Court of Washington quoted *Gerberg v. Crosby* [citation]:

> " '* * * If the issue involves a matter of common knowledge about which inexperienced persons are capable of forming a correct judgment, there is no need for expert opinion. There are many matters, however, about which the triers of fact may have a general knowledge, but the testimony of experts would still aid in their understanding of the issues. * * *.'
>
> * * *

This court has long recognized that a *qualified expert* is competent to express an opinion on a *proper subject* even though he thereby expresses an opinion on the ultimate fact to be found by the trier of fact.

'[I]n those instances in which the reasons for admissibility or exclusion of opinion evidence are both fairly debatable, the trial court has a very wide discretion which will not be reversed on appeal. [Citing cases.]' "

Other jurisdictions have taken the same position: *People v. Haeussler,* 41 Cal.2d 252, 260, 260 P.2d 8; *George v. Bekins Van & Storage Co.,* 33 Cal.2d 834, 843, 205 P.2d 1037; *Currier v. Grossman's of New Hampshire,* 107 N.H. 159, 219 A.2d 273.

▪▪▪ We think, therefore, the better rule would give a trial judge a wide area of discretion in permitting expert testimony which would aid the triers of fact in their understanding of the issues even though they might have a general knowledge of the subject matter. With this rule as a guideline we find the trial court correctly exercised his discretion in admitting the opinion evidence of Jambois. He had a bachelor's degree in physical education and a master's degree in educational training; he had taught physical education for three years; he had been employed for several years with various public and church groups, including the Y.M.C.A. and the Chicago Park District; he had been Director of Athletics at the Chicago Athletic Association for seven years during which time he had programmed and administered various athletic activities involving about 200 to 300 children a year; his training and experience included the game called line ball or fastpitch and the supervision of games in which a bat is used. He testified the safety factor is an inherent part of physical education and is always stressed; he had extensive experience in playground activties and playground supervision.

It is reasonable to assume that he was familiar with statistical data with respect to playground accidents. His personal experience gave him an opportunity to observe the relative strengths of children depending on their size and age. It is obvious that his knowledge on the matter of playground safety was superior to that of the average juror and that his testimony would aid them in their understanding of the issues. Significantly, Kowalczyk, himself an expert, had an opinion that 50 feet was a safe distance between teenagers playing fastpitch and eight-year-olds. The case was fairly tried and the issues correctly presented to the jury.
- The judgment of the circuit court is affirmed.

Judgment affirmed.

BURKE, P. J., and GOLDBERG, J., concur.