NITA J. TRIPP, Indiv. and as Adm'r of the Estate of Dennis C. Tripp, Plaintiff-Counterdefendant, v. BUREAU SERVICE COMPANY et al., Defendants-Counterplaintiffs and Third-Party Plaintiffs-Appellants.—(BURLINGTON NORTHERN, INC., et al., Third-Party Defendants-Appellees.)

Third District   No. 76-526

Opinion filed July 27, 1978.

Thomas H. Fegan and Paul R. O'Malley, both of William D. Maddux, Ltd., of Chicago, for appellants.

John J. Henely, Cornelius P. Callahan, and Hugh C. Griffin, all of Lord, Bissell & Brook, of Chicago, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by Bureau Service Company and Edwin Gallagher, individually, and as administrator of the estate of James Gallagher, deceased, from a determination in the trial court adversely to their counterclaim against Burlington Northern, Inc., and National Railroad Passenger Corporation (Amtrak).

This case concerns a collision between a four-car Burlington Northern-Amtrak passenger train and a Bureau Service Company fuel truck at a rural railroad crossing in Bureau County, Illinois. Dennis C. Tripp, the fireman on the passenger train, and James Gallagher, the driver of the fuel truck, died from injuries sustained in the accident. Plaintiff Nita J. Tripp, the widow of fireman Dennis C. Tripp, commenced suit in the Circuit Court of Rock Island County against defendants Bureau Service Company and Edwin Gallagher, individually and as administrator of the estate of James Gallagher. Defendants Bureau Service and Gallagher counterclaimed against Tripp and filed a third-party complaint against Burlington Northern, Inc., and National Railroad Passenger Corporation (Amtrak) for wrongful death and property damage. Following a lengthy trial, the jury returned verdicts in the Circuit Court of Rock Island County finding in favor of plaintiff Tripp on her claim against defendants Bureau

Service and Gallagher in the sum of $359,344, and finding in favor of Tripp, Burlington and Amtrak on Bureau Service's and Gallagher's counter and third-party claims. The jury additionally found, in answers to special interrogatories, that decedent Gallagher was guilty of negligence contributing to the cause of the collision and that decedent Tripp was not guilty of negligence contributing to the accident.

Tripp, Bureau Service, and Gallagher settled all claims between them, including the judgment entered in favor of Tripp and against Bureau Service and Gallagher. In this court, on appeal solely with respect to their third-party claim against Burlington and Amtrak, Bureau Service and Gallagher argue that (1) the issue of decedent Gallagher's contributory negligence was not fairly presented to the jury, (2) the issue of decedent Tripp's and defendants Burlington's and Amtrak's negligence was not fairly presented to the jury, and (3) the trial court erred in directing verdicts in favor of Burlington and Amtrak on the issues of Burlington's and Amtrak's alleged willful and wanton conduct and violation of certain safety legislation.

It is noted from the record that the accident giving rise to this action occurred at about 8:35 a.m. on September 20, 1972, when a Burlington Northern Zephyr passenger train collided with a Bureau Service gasoline truck at a rural crossing less than one mile northeast of Arlington, Illinois. The passenger train was being operated by engineer Robert Thorne and fireman Dennis Tripp, and the fuel truck was being operated by James Gallagher, while he was in the employ of Bureau Service. Dennis Tripp and James Gallagher died shortly after the accident as a result of injuries suffered in the occurrence. Engineer Robert Thorne was the only person available at the trial of this cause who witnessed the events immediately preceding the impact. It appears that Thorne has died since the trial in the circuit court.

The original action in this cause was brought by Nita J. Tripp, the widow of fireman Dennis C. Tripp (individually and as administrator of Dennis C. Tripp's estate), against Edwin Gallagher (individually and as administrator of James Gallagher's estate), and Bureau Service. Tripp's complaint sought damages for wrongful death, pain and suffering, and funeral and medical expenses. Gallagher and Bureau Service counterclaimed against Tripp and filed a third-party action against Burlington and Amtrak, asserting in both actions claims for wrongful death and property damage on theories of negligence, willful and wanton misconduct, and violations of certain safety statutes.

The evidence at trial established that the collision occurred at the crossing of the Burlington mainline tracks and a narrow gravel road in Bureau County, approximately one mile north of Arlington, Illinois. It appears that the east-west road was maintained by the township, and

served a total of eight farms along its three- to four-mile length. The Burlington mainline consisted of two tracks which crossed the road at a 36° angle from the southwest to the northeast. The crossing of the mainline and the road was on a rise, and was approximately 24 feet wide. The crossing was marked with railroad crossbucks and with yellow and black railroad warning signs. While the crossing was not protected by automatic safeguards, evidence at trial indicated that there were numerous other angled crossings in Bureau County marked solely by crossbucks. It further appears that there was a rise in terrain approximately 850 feet southwest of the crossing.

Testimony from various local residents indicated that the standard method of approaching the crossing from the west was to stop the vehicle about 25 feet, or less, west of the crossing, and then lean forward and look to the right. By approaching the intersection in this manner, a driver would have few restrictions and a good view down the tracks for a distance of at least 2000 feet. It appears that if an eastbound driver stopped his vehicle significantly more than 25 feet west of the crossing, his view was partially blocked by the rise to the southwest of the crossing. The testimony of fuel truck drivers for Bureau Service established that the standard method of approaching the crossing while operating a fuel truck was to stop about 25 feet from the crossing so as to obtain a good view down the tracks.

It appears that sometime in the summer of 1972 James Gallagher expressed a desire to help his father, Edwin Gallagher, drive his fuel truck for Bureau Service. While James Gallagher had been a licensed driver for about three years, he had to obtain a class "C" driver's license in order to operate the fuel truck. James Gallagher had passed the test for his class "C" driver's license within the month preceding the accident, and had received his new license in the mail six days prior to the accident. Approximately two weeks before the occurrence Edwin Gallagher taught his son the above-described method of approaching the angled railroad crossing using the same truck which was involved in the collision. It seems that since the 1800-gallon tank on the gasoline truck obscured the view out the rear window of the truck, a proper approach was essential in order to safely traverse the angled railroad tracks.

On the day of the accident, Edwin Gallagher was away on a fishing trip when his wife received word at approximately 7:30 a.m. that a construction crew needed a fuel delivery. Mrs. Gallagher informed her son James who had returned home from his job at a restaurant shortly after midnight. James Gallagher then set out in his father's fuel truck, carrying 165 gallons of gasoline and 620 gallons of diesel fuel, to make the delivery at a location about three-quarters of a mile east of the crossing at which the accident occurred.

The train involved in the collision was a four-car Burlington-Amtrak passenger train with an ultimate destination in Chicago. The train had arrived in Galesburg at about 7:25 a.m., where a crew change had taken place. The crew taking the train out of Galesburg included engineer Robert Thorne, with 31 years experience, and fireman Dennis Tripp, with two years experience. The train was five minutes late in leaving Princeton, its last stop prior to the accident. The day in question was clear, with visibility of over two miles. Engineer Thorne testified that after leaving Galesburg he kept the speed of the train at 79 miles per hour, the speed limit set by the railroad for the area, with minor variations up and down due to terrain. The engine's dual headlight was on, and the record indicated that an oscillating Mars light was probably on as well.

Engineer Thorne testified at trial that after the train passed through Arlington and while it was still 3,000 feet from the crossing, he saw Gallagher's white fuel truck approaching the crossing from the west. Although the train had not yet reached the whistle post for the crossing, Thorne testified that he began to blow the engine whistle in the standard sequence as soon as he saw the truck. Thorne stated that he observed the truck come to a hesitation or rolling stop about 75 to 100 feet west of the crossing, and then continue on toward the crossing. When the truck kept coming, Thorne testified that he applied the emergency braking system at 60 to 70 feet from the crossing. The train could not be stopped short of the crossing, and the train struck the rear of the tank truck. The train finally stopped approximately ½-mile past the intersection.

Additional evidence at trial indicated that the railroad employed a speed tape recorder on the train, and that the recorder registered a speed of 82 miles per hour at the time of impact. It appears, further that physical peculiarities of the specific speed recorder could have caused this reading to be either high or low.

Following presentation of the evidence, the trial court directed a verdict in favor of Burlington and Amtrak on the third-party claims based on willful and wanton misconduct and violation of certain safety legislation. Following instruction by the trial court, the jury deliberated on the counts of Tripp's complaint and on the remaining (negligence) counts of the Gallagher and Bureau Service counterclaims and third-party claims. The jury returned verdicts finding in favor of Tripp on her claim against Gallagher and Bureau Service, and against Gallagher and Bureau Service on their counterclaim and third-party claim. In answers to special interrogatories, the jury found that James Gallagher had been guilty of negligence contributing to the cause of the collision, and that Dennis Tripp had not been guilty of negligence contributing to the collision. The trial court entered judgment on the jury's verdicts, and denied Gallagher's and Bureau Service's post-trial motion.

Subsequent to the filing of the notice of appeal in this cause, Tripp settled all of her claims against Gallagher and Bureau Service. Therefore, Gallagher and Bureau Service now appeal only from the jury verdict and judgment denying them recovery on their third-party claims against Burlington and Amtrak.

■■■ Gallagher and Bureau Service first argue on this appeal that the issue of whether James Gallagher was guilty of contributory negligence which contributed to the cause of the collision was unfairly presented to the jury due to prejudicial errors committed by the trial court and counsel for Burlington. Appellants argue that the trial court erred in allowing counsel for Burlington to elicit testimony from the police officer who investigated the accident to the effect that the officer's accident report indicated that the cause of the accident was the failure of Gallagher's tank truck to yield the right of way. It appears that the officer was called as a witness by Gallagher, and that on direct examination the officer had made use of his accident report. On cross-examination, the officer testified that the report indicated that the truck failed to yield right of way, over the sole objection of appellants that such testimony exceeded the scope of cross-examination. Appellants now seek to argue that the testimony was improperly admitted because police reports are in the nature of hearsay and because the testimony represented the officer's opinion on an ulti-mate issue in the case. As stated in *Continental Illinois National Bank v. Eastern Illinois Water Co.* (5th Dist. 1975), 31 Ill. App. 3d 148, 159, 334 N.E.2d 96:

> "Grounds of objection to the admission of evidence which have not been included in the objection entered at trial cannot be considered on appeal. [Citations.]"

(Accord, *Northern Trust Co. v. Winston* (1st Dist. 1975), 32 Ill. App. 3d 199, 208, 336 N.E.2d 543.) It is additionally noted, also, that the fact that appellants called the officer as a witness and examined the officer with respect to the police report constitutes a waiver of the claim that such reports are not admissible into evidence.

■■ Appellants further argue that presentation of the issue of James Gallagher's negligence was prejudiced by certain comments made in the final argument of counsel for Burlington and Amtrak. It is noted, as stated in *Goldstein v. Hertz Corp.* (1st Dist. 1973), 16 Ill. App. 3d 89, 94, 305 N.E.2d 617, 622:

> "In closing argument counsel is not limited to a repetition of witness' direct examination, but may present the evidence in a light most favorable to his case. [Citation.] Attorneys must be allowed in closing argument to make reasonable comments upon the evidence. [Citation.] The latitude of permissible remarks may be wider when these remarks are made in response to direct remarks

of opposing counsel [citation], and in urging conclusions counsel should be accorded broad latitude."

The court in *Schwedler v. Galvan* (1st Dist. 1977), 46 Ill. App. 3d 630, 641-42, 360 N.E.2d 1324, further stated:

"We recognize that counsel in closing statement may be vigorous and eloquent and make fair comment upon the evidence. [Citations.] He may present the evidence in the light most favorable to his case [citation], and may draw inferences from the evidence. But this does not give him the right to misrepresent the evidence or argue facts not in evidence. [Citations.] It also does not give him the right to refer to the fact that certain evidence was excluded by the court. [Citations.]"

Appellants now object to comments by counsel for Burlington indicating that the Illinois Commerce Commission decides when and where automatic gates and lights are to be installed at railroad crossings and that there were more than 100 angled railroad crossings in Bureau County. We have examined the evidence which was introduced in the record regarding the Illinois Commerce Commission's role in the installation of automatic gates and lights and regarding the quantity of angled crossings within Bureau County, and conclude that Burlington's counsel's remarks are within the bounds of fair comment upon that evidence in the record. Appellants also argue that Burlington's counsel's remarks during closing argument, that James Gallagher had just received a driver's license 6 days prior to the accident, violated the trial court's order in limine that no party introduce evidence concerning the lack of any driver's education program. It appears, however, that the comments did not directly refer to any lack of driver's training program on the part of James Gallagher, and that counsel's remarks were fair comment upon evidence actually introduced at trial.

■■ Appellants further argue that presentation of the issue of James Gallagher's contributory negligence to the jury was prejudiced by the giving of jury instructions which were contrary to law, improper in form, and duplicative. The trial court gave the jury instructions based on both sections 11—1201 and 11—1202 of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, pars. 11—1201 and 11—1202), and the appellants contend the giving of instructions based on both provisions was error. Section 11—1201 requires "any person driving a vehicle" to stop when approaching a railroad crossing under specified circumstances (generally when a train is approaching), and section 11—1202 requires the driver of any vehicle containing liquid petroleum products to stop when approaching a railroad crossing under any conditions. In the instant case, evidence was presented to the jury indicating that James Gallagher approached the railroad crossing when a train was in hazardous proximity to the crossing,

as well as that he approached the crossing in a tank truck carrying liquid petroleum products. It thus appears that both instructions were warranted by the evidence. Appellants also complain that an instruction setting forth Burlington's affirmative defenses was unduly overlapping and repetitious. Following examination of the instruction (which was correct) we do not find it to be prejudicially repetitious, as contended by appellants.

■■ Gallagher and Bureau Service next maintain that the issue of the negligence of Tripp, Burlington and Amtrak was unfairly presented to the jury as a result of various evidentiary rulings and the refusal of certain tendered instructions. Appellants argue that the trial court erred in allowing engineer Thorne to give his opinion on an ultimate issue in the case. It appears that after Thorne was qualified as an expert witness with respect to the activities of a railroad fireman, Thorne gave his opinion that Dennis Tripp could ' not have done anything to have prevented the accident. As stated in *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 122, 273 N.E.2d 809:

> "* * * defendant argues that the expert, in stating his opinion, testified to the ultimate issue in the case, thus invading the province of the jury. Opinions of this court however [citations], make it clear that since the trier of fact is not required to accept the opinion of the expert, such evidence does not usurp the province of the jury."

■■ Appellants next argue that the trial court erred in denying admission of evidence of a prior accident at the same railroad crossing. It appears that appellants attempted to elicit testimony from Eugene Ballatti (a railroad ticket agent and former sectionhand) regarding a prior accident between a milk truck and a train in the 1940's. While evidence of prior accidents occurring under substantially similar conditions is admissible for the purpose of showing knowledge of a dangerous condition (*Churchill v. Norfolk & Western Ry. Co.* (4th Dist. 1977), 46 Ill. App. 3d 781, 793, 362 N.E.2d 356), it does not clearly appear of record, in the instant case, that appellants established a substantial similarity of conditions between the instant accident and the accident in the 1940's. Moreover, it appears that appellants sought to have Ballatti testify to the former accident, even though Ballatti did not witness the prior collision, but rather was a sectionhand who helped clear the wreckage from the scene of the 1940's accident. Thus, the trial court properly excluded as hearsay, Ballatti's testimony regarding the earlier occurrence. *People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.

■■ Appellants further argue that the trial court erred in refusing to allow them to examine Mr. Ballatti as an adverse witness under section 60 of the Civil Practice Act. It seems that Ballatti was simply a ticket agent

for defendant Burlington, and under such circumstance we cannot say that the trial court abused its discretion in ruling that Ballatti was not an officer, director, managing agent or foreman of Burlington. Ill. Rev. Stat. 1977, ch. 110, par. 60.

■■ Appellants also contend that they were denied the right to elicit testimony regarding the post-accident changes in the railroad maintenance procedures. Appellants attempted to introduce testimony of weed-cutting in 1973 as to this issue. In view of the fact that the accident in the instant case occurred in 1972, and the further fact that the testimony which was sought to be introduced covered procedures in 1973, the relevance of such tendered testimony was not apparent. No other specific instance of maintenance procedures which would be pertinent to the issue was shown. We conclude that the action of the trial court, in excluding such evidence, did not constitute reversible error.

Gallagher and Bureau Service next contend that the trial court improperly admitted the evidence of Gerald Strawser, an employee of the National Transportation Safety Board, into evidence. At trial, appellants objected to the reading of the evidence deposition into evidence on the ground that Strawser was not unavailable as a witness within the meaning of Supreme Court Rule 212(b). However, on this appeal, appellants seek to argue that portions of the deposition were inadmissible as hearsay. Since the hearsay objection was not urged before the trial court and since the arguably hearsay portions of the deposition were cumulative to other evidence introduced at trial, we will not now consider appellants' hearsay objections as reversible error.

■■ Appellants further argue that the trial court erred in certain evidentiary rulings regarding similar conditions of other crossings in Bureau County and regarding the admission of an affidavit of the physician as to a witness who was not able to attend the trial and whose deposition had been read into evidence at trial. As stated in *Trippel v. Lott* (1st Dist. 1974), 19 Ill. App. 3d 936, 944, 312 N.E.2d 369:

> "The admission of evidence rests largely in the discretion of the trial court and its decision should be reversed only when such discretion has been clearly abused. [Citation.]

We have examined the evidentiary rulings complained of, and conclude that such rulings were not an abuse of the trial court's discretion.

Appellants also contend that the issue of the negligence of Tripp, Burlington and Amtrak was unfairly presented to the jury due to the trial court's refusal to charge the jury with certain instructions tendered by appellants. It appears, however, that the trial court gave appellants' tendered instructions which were not prejudicially duplicative and were supported by the evidence.

■■ Gallagher and Bureau Service finally argue that the trial court erred

in directing verdicts in favor of Burlington and Amtrak on the issues of willful and wanton misconduct and violations of the Federal Safety Appliance Act (45 U.S.C.A. §§1-16 (1972)) and Boiler Inspection Act (45 U.S.C.A. §23 (1972)). We note, on the *Pedrick* case precedent, that a verdict ought to be directed only in those cases in which all of the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern Railroad Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) From our review of the record, we conclude that there was no evidence before the court tending to establish willful or wanton misconduct on the part of Tripp, Burlington or Amtrak, and that, therefore, the trial court properly directed a verdict on that issue. We further determine that appellants failed to present evidence of the alleged violations of the Safety Appliance Act and Boiler Inspection Act, and that the trial court also properly directed verdict on those counts.

Finally, we observe that the trial of this cause lasted for 2½ weeks, and included the testimony of many witnesses and the introduction of much evidence. The rights of the parties were vigorously and competently presented by their counsel. As stated in *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 559, 356 N.E.2d 779:

> "Plaintiff is not entitled to an absolutely error-free trial. [Citation.] 'Where it appears that an error did not affect the outcome below, or where the court can see from the entire record that no injury has been done, the judgment or decree will not be disturbed.' [Citation.] The trial taken as a whole was fair, and none of plaintiffs' allegations of error merit reversal of the jury's verdict."

We believe the *Lawson* case commentary is applicable to the instant case. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

STOUDER, P. J., and SCOTT, J., concur.