THE BOARD OF LIBRARY TRUSTEES OF THE FOUNTAINDALE PUBLIC LIBRARY DISTRICT, WILL AND DU PAGE COUNTIES, Plaintiff-Appellee, v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant-Appellant.—(RAY J. BENOIT & SON, INC., Defendant.)

Third District    No. 81-137

Opinion filed November 24, 1981.—Rehearing denied December 30, 1981.

Cornelius F. Riordan, Gary L. Griffin, and Terrance A. Vaisvilas, all of McNeela & Griffin, Ltd., of Chicago, for appellant.

Edgar D. Ballard, Jr., Bruce K. Roberts, and Marcia E. Doane, all of Schuyler, Ballard & Cowen, of Chicago, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

The Board of Library Trustees of the Fountaindale Public Library District (the Board) brought this action against Fidelity and Deposit Company of Maryland (Fidelity) and Ray J. Benoit & Son, Inc. (Benoit), upon a performance bond issued by Fidelity. The Board sought recovery for a nine-month delay in completion of the construction of two buildings, which delay was caused by Benoit's default on its contract with the Board. The trial court directed a verdict against Fidelity on the issues of special damages resulting from the delay and Fidelity's liability for general damages. The jury determined that the amount of general damages for the nine-month period was $150,000, and the court entered judgment accordingly. On appeal, Fidelity contends that the award of general damages for delay in completion of public library buildings is in error. Fidelity does not challenge the directed verdict on special damages.

Shortly after the Fountaindale Public Library District was formed in 1968, the Board determined that it required the construction of two buildings to house its facilities. Arrangements were made with Valley View Unit District No. 365U, Will County, Illinois (School District 365U), whereby the School District would furnish two tracts of land—one in Bolingbrook and the other in Romeoville, Illinois—in exchange for a 10-year lease on the entire lower level of the building to be constructed in Romeoville. Both tracts were situated within zones restricted for residential use; however, certain public purpose buildings, including public libraries, were also permitted. The amount of usuable space rented to School District 365U was about 19,000 square feet. The period of the lease was to commence upon the issuance of the architect's certificate of substantial completion.

Later, similar arrangements were made between the Board and the Joliet Junior College and between the Board and Du Page Township for the rental of 11,500 square feet of space on the lower level of the Bolingbrook facility. The rental rate for these entities was to be determined based on the amortization of the direct costs incurred by the Board in providing the space. No profits were anticipated. The upper levels of both buildings were reserved for library occupancy.

The Board awarded the construction contract for the two buildings to general contractor, Ray J. Benoit & Son, Inc., in August 1973. The contract provided that the completion date would be within 365 days of

the contract date. It included a "time is of the essence" clause, and required that Benoit furnish a performance bond to the Board. The bond so furnished was executed by Benoit as principal and Fidelity as surety.

Benoit performed under the contract from August of 1973 until April of 1974, when it ceased activities and declared itself in default. Fidelity stepped in and rebid the general contracting job pursuant to the terms of the performance bond. At the recommendation of Fidelity, the Board entered into a new contract with Wilfred's, Inc., in July 1974 for the completion of the two projects. This contract specified that the work would be completed within 320 days. In May 1975 the Romeoville building was substantially complete; and in September 1975 the Bolingbrook building was ready for occupancy. The quality of construction is undisputed—both parties agreeing that the buildings were very well constructed.

The Board brought suit in the circuit court of Will County seeking general damages for the nine-month delay—from August of 1974 to May of 1975—in completion of the buildings. (No damages were sought for the period between May and September of 1975 when the Bolingbrook facility was finally completed.) In addition, the Board sought special damages for additional architects' fees and attorney's fees that were occasioned by the delay. Although both Fidelity and Benoit were named defendants in the suit, only Fidelity appeared and answered the complaint.

The cause proceeded to a trial by jury on November 3, 1980. Upon the completion of the presentation of all evidence, the court allowed plaintiff's motion for a directed verdict on the issues of special damages and Fidelity's liability for the delay. The sole issue thereafter remaining for the jury's consideration was the amount of general damages for delay recoverable by the Board.

On the latter issue, the Board presented two real estate appraisers as expert witnesses. They testified that the fair rental value of the properties for the nine-month period was between $358,479 and $376,000. These figures were based on comparable commercial rentals in the geographic areas involved. Fidelity presented its own expert witness who testified as to the rental value of the space for which leases had been secured by the Board. According to this witness, the space occupied by School District 365U was valued at $34,400 per year, and the space occupied by Joliet Junior College—16,061 square feet—and Du Page Township—1674 square feet—was worth $3.50 and $4.48 per square foot per year respectively. He appraised the value of the upper levels of the buildings, occupied by the library and measuring approximately 19,000 square feet in each building, at $3.50 per square foot per year.

The jury was instructed to assign a fair rental value based on gross

rental value less expenses saved by the Board as a result of the delay. The jury returned a verdict for the Board in the amount of $150,000, and judgment was entered accordingly.

On appeal, Fidelity has raised two primary issues—whether general damages for delay in completion of a public building are recoverable by the public body; and whether the trial court committed reversible error in refusing to instruct the jury that they could not consider inconvenience to the public in computing general damages for delay.

■■ We first consider whether the Board may recover general damages. If so, we must further determine whether the proper basis for measuring damages to a public body is the fair rental value for the period of delay.

Fidelity argues firstly that a public body, such as the Board, with no profit motive can not recover general damages for delay in the completion of a public improvement because the injury is mere inconvenience to the public, a loss which is nonrecoverable because it is incapable of measurement. (*Harlev v. Sanitary District* (1907), 226 Ill. 213, 225.) Fidelity cites several cases as authority for the proposition that a public entity will be denied relief in the form of general damages for delay unless the contracting parties included a liquidated damages provision in their agreement. We note, however, that none of Fidelity's cases deal with buildings, such as those with which we are concerned in this case. Rather, the cases cited to us concern improvements such as a drainage canal (*Harlev*), a water pumping station (*Parker-Washington Co. v. City of Chicago* (1915), 267 Ill. 136), bridges (*Wisconsin Bridge & Iron Co. v. City of Alpena* (1927), 238 Mich. 164, 213 N.E. 93), and athletic fields (*Abel Construction Co. v. School District* (1972), 188 Neb. 205, 195 N.W.2d 744).

Only one case has been cited which deals with a public building comparable to the buildings in the present case. In the rather old case of *Hipwell v. National Surety Co.* (1905), 130 Iowa 656, 105 N.W. 318, the city of Fort Dodge, Iowa, contracted for the construction of a public library. When the contractor failed to perform within the time specified, the city sued the surety for general damages resulting from the delay. The *Hipwell* court observed that, under ordinary circumstances, the measure of damages is the rental value of the building during the period of delay. However, when a public building has no rental value, evidence of actual value of its use to the public is permissible. The city in *Hipwell* sought to prove damages by establishing the rental expenses incurred by the city for substitute space during the delay. However, no proof of rental value of the library building itself was introduced. The court, accordingly, ruled that because the city's evidence failed to establish that the library was rentable, the city's proof of rental of other buildings was insufficient to serve as a basis for relief.

The result in *Hipwell* does not control our determination in the

present case. If the sole evidence of fair rental value had consisted merely of what the Board paid to rent temporary space for its facilities, we might be inclined to adopt the reasoning of *Hipwell*. In fact, the evidence of rental value of the library buildings themselves was presented through testimony by both parties to the instant suit. The Board established that the buildings had been designed with the express intention of renting out space to other entities. The lease with School District 365U was signed on June 11, 1973, more than two months before the Board entered into its contract with Benoit. Negotiations for leasing space to the Joliet Junior College and Du Page Township were also begun in 1973 and culminated in leases which were signed in May of 1975. Fidelity's expert witness established the rental value of the two buildings with reference to the leases. On these facts, we do not hesitate to conclude, as did the trial court, that the Board, unlike the city in *Hipwell*, established ample foundation for measuring general damages by the fair rental value of the buildings during the period of delay.

Proof of fair rental value in the present case consisted of expert testimony from three individuals with considerable experience in appraising the value of real estate. Fidelity's own expert's testimony established that the fair rental value of the space in the two buildings during the delay was approximately $160,000. The Board's experts testified that the fair rental value, based on comparable buildings, was in the range of $358,500 to $376,000. The jury was instructed to determine general damages by subtracting the amount of money saved by the Board as a consequence of the delay from the fair rental value of the two buildings during the nine-month period. The amount of damages determined by the jury—$150,000 —is clearly within the range of the evidence admitted during the trial. Accordingly, we will not disturb the jury's finding.

■■ Finally, we are asked to decide whether or not the trial court properly refused to give Fidelity's instruction which stated that the jury was not to consider inconvenience to the public as an element of damages. The tendered instruction is a correct statement of the law in Illinois. (See *Harlev v. Sanitary District* (1907), 226 Ill. 213, 225.) As we have stated above, however, the verdict returned by the jury was well within the range of the evidence which could be considered by them; in addition, there is no evidence that the jury improperly included any damage value for the inconvenience suffered by the public. Error in failing to instruct the jury on inconvenience to the public was, therefore, harmless.

For the reasons stated, we affirm the judgment entered by the circuit court of Will County.

Affirmed.

SCOTT, P. J., and STOUDER, J., concur.