ALICE DUFFY, Plaintiff-Appellee, v. MIDLOTHIAN COUNTRY CLUB *et al.*, Defendants-Appellants (Dow Finsterwald, Defendant).

First District (5th Division)   No. 83—2805

Opinion filed July 26, 1985.

Victor J. Piekarski, of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellants.

Donald E. Barliant, of Yaffe, Mark, Barliant & Ganellen, of Chicago, for appellee.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendants-appellants Midlothian Country Club (Midlothian) and the Western Golf Association (WGA) (defendants) appeal from a jury verdict awarding plaintiff-appellee Alice Duffy (plaintiff) $448,380 in a

personal injury action. On appeal, defendants maintain (1) that the trial court improperly prevented defendants from asserting an assumption of risk defense, (2) that the trial court abused its discretion in allowing plaintiff's witness to testify as an expert, and (3) that the cumulative effect of various rulings and the improper conduct of plaintiff's counsel resulted in a jury verdict based on passion and prejudice. We affirm.

On June 29, 1973, plaintiff attended the Western Open professional golf tournament (the tournament) as a paying spectator. The tournament was held at Midlothinan and sponsored jointly by Midlothian and WGA. Plaintiff attended the tournament with her son, her son's friend, and the friend's mother, Audrey Scheufler. Upon their arrival, plaintiff and Mrs. Scheufler went to the first tee and watched a contestant tee off on the first fairway. At this time, and throughout the pertinent time period, plaintiff remained within the roped-off areas reserved for paying spectators. After watching the contestant on the first tee, plaintiff and Mrs. Scheufler walked to a concession tent (tent 1) located south of the first tee and east of a service road which ran across both the first hole and the parallel 18th hole. Not finding what they wanted, plaintiff and Mrs. Scheufler left tent 1 and walked west across the service road, between the first and 18th holes, and into a second concession tent (tent 2).

Following is a sketch which generally depicts the layout of the areas of the first and eighteenth fairways:

After purchasing refreshments, the two women left tent 2, walked west, and joined a group of spectators watching the first fairway. As plaintiff stood talking and eating her food, she was hit in the eye by a ball shot from the 18th tee by Dow Finsterwald (Finsterwald), a professional golfer participating in the tournament. As a result, plaintiff has completely lost the sight in her right eye.

Plaintiff subsequently sued for injuries sustained, alleging, *inter alia*, that defendants (1) had failed to give plaintiff timely warning of the approaching shot, (2) had failed to restrict or warn plaintiff from a dangerous area, and (3) had failed to provide a reasonably safe environment for a professional golf tournament.[1] Following discovery, defendants moved for summary judgment. In their motion, defendants maintained that plaintiff, an allegedly experienced golfer, appreciated the risks inherent in a professional golf tournament. Defendants consequently argued that plaintiff had voluntarily assumed a known risk and, therefore, was barred from recovery. The trial court agreed and granted defendants' motion. On appeal, this court reversed and remanded, holding that defendants had a duty of reasonable care toward spectators as business invitees. (*Duffy v. Midlothian Country Club* (1980), 92 Ill. App. 3d 193, 415 N.E.2d 1099.) We further ruled that the applicable standard of reasonable care was a variable question of fact for jury determination. Finally, we stated that assumption of risk could be a defense to plaintiff's claim if it could be proven that plaintiff fully appreciated the risks inherent in the situation.

On remand, the jury found that plaintiff had sustained $498,200 in damages which were proximately caused by defendants' negligence. The jury additionally determined that 10% of plaintiff's damages were attributable to her own negligence. Consequently, the award was reduced by 10% to $448,380.

OPINION

I

Defendants initially contend that the trial court improperly prevented their assertion of assumption of risk as a complete defense to plaintiff's claim. Defendants maintain that this court's decision in *Duffy v. Midlothian Country Club* (1980), 92 Ill. App. 3d 193, 415 N.E.2d 1099, operates as the law of the case and consequently compels this conclusion. Furthermore, defendants claim that they created no additional risk beyond those risks inherent in the situation which plaintiff, as a spectator, had assumed. Defendants specifically argue that the trial court erred in granting plaintiff's motion *in limine* to preclude defendants' use of the words "assumption of risk" and "as-

---

[1]Plaintiff's complaint also named the Professional Golfers Association (PGA) and Finsterwald as defendants in the same action. PGA was subsequently dismissed on plaintiff's motion. The complaint against Finsterwald went to the jury, who found for him and against plaintiff.

sumed the risk." Defendants additionally argue that the trial court incorrectly refused to instruct the jury concerning assumption of risk as a complete defense.

Plaintiff, on the other hand, rejects these contentions, maintaining that the court's rulings were proper and the verdict just. Furthermore, plaintiff argues that the adoption of comparative negligence in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, necessarily nullified implied assumption of risk as a complete defense to negligence actions. Plaintiff declares that this conclusion was expressly indicated in *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197, wherein implied assumption of risk was limited by comparative negligence in strict-products-liability actions. In short, plaintiff not only requests affirmance of the trial ruling and verdict below, but also an express nullification of implied assumption of risk as a defense in negligence actions.

■ Since its introduction into negligence law, assumption of risk has operated as a complete bar to plaintiffs' recoveries. Such drastic results were supported by the argument that plaintiff had voluntarily assumed an ascertainable risk, thus relieving defendant of all legal duties. The doctrine has subsequently developed into both express and implied forms. Under express assumption of risk, plaintiff and defendant explicitly agree, in advance, that defendant owes no legal duty to plaintiff and therefore, that plaintiff cannot recover for injuries caused either by risks inherent in the situation or by dangers created by defendant's negligence. Under the express form of the doctrine, defendants only sustain liability if their actions are construed as wanton, wilful or reckless, or if damages arise from an agreement deemed contrary to public policy. Prosser, Torts sec. 68, at 439-45 (4th ed. 1971).

Under the implied form of assumption of risk, plaintiff's willingness to assume a known risk is determined from the conduct of the parties rather than from an explicit agreement. The implied form of the doctrine has itself been subdivided into primary and secondary categories. The primary label has been applied to situations where a plaintiff has assumed known risks inherent in a particular activity or situation. The assumed risks there are not those created by defendant's negligence but rather by the nature of the activity itself. Thus, primary implied assumption of risk is, arguably, not a true negligence defense, since no cause of action for negligence is ever alleged. Kionka, *Implied Assumption of the Risk: Does It Survive Comparative Fault?* 1982 S. Ill. L.J. 371.

Secondary implied assumption of risk, on the other hand, is a true

defense, since there plaintiff implicitly assumes the risks created by defendant's negligence. Because the secondary doctrine places greater burdens on plaintiff without his express consent, this form of implied assumption of risk has been criticized by both courts and commentators. Indeed, some courts have even refused to allow an implied assumption of risk defense in negligence actions. (See, *e.g., Jewell v. Kansas City Bolt & Nut Co.* (1910), 231 Mo. 176, 132 S.W. 703.) Until recently, however, most courts have upheld implied assumption of risk as a valid negligence defense if plaintiff's knowledge and volition could be proven. See, *e.g., Kennedy v. Providence Hockey Club, Inc.* (1977), 119 R.I. 70, 376 A.2d 329; *Bugh v. Webb* (1959), 231 Ark. 27, 328 S.W.2d 379.

Secondary assumption of risk has been viewed as functionally similar to contributory negligence. (See generally, Kionka, *Implied Assumption of the Risk: Does It Survive Comparative Fault?* 1982 S. Ill. L.J. 371.) This similarity is precisely the rationale used by critics arguing for abolition of the secondary doctrine. These critics maintain that comparative negligence, which effectively abolished contributory negligence, should operate similarly on secondary implied assumption of risk. Thus, comparative negligence would prevent assumption of risk from operating as a complete bar to recovery in negligence actions. This argument received support in the supreme court's decision in *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197. In *Coney*, the court held that comparative fault principles would apply to the apportionment of damages in strict products liability cases. Moreover, the court ruled that defenses of misuse and assumption of risk would no longer bar recovery in products liability actions. Instead, plaintiff's assumption or misconduct would merely be a factor in the apportionment of damages.

Here, plaintiff contends that *Coney* implicitly compels the abolition of the assumption of risk defense as a complete bar to recovery in negligence actions. Additionally, plaintiff has demonstrated that a vast majority of States have abolished or severely limited the assumption of risk defense following their adoption of comparative negligence. (See generally *Leavitt v. Gillaspie* (Alaska 1968), 443 P.2d 61; *W. M. Bashlin Co. v. Smith* (1982), 277 Ark. 406, 643 S.W.2d 526; *Segoviano v. Housing Authority* (1983), 143 Cal. App. 3d 162, 191 Cal. Rptr. 578; *Brown v. Kreuser* (1977), 38 Colo. App. 554, 560 P.2d 105; *Wendland v. Ridgefield Construction Services, Inc.* (1983), 190 Conn. 791, 462 A.2d 1043; *Blackburn v. Dorta* (Fla. 1977), 348 So. 2d 287; *Burrows v. Hawaiian Trust Co.* (1966), 49 Hawaii 351, 417 P.2d 816; *Fawcett v. Irby* (1968), 92 Idaho 48, 436 P.2d 714; *Smith v. Blakey*

(1973), 213 Kan. 91, 515 P.2d 1062; *Wilson v. Gordon* (Me. 1976), 354 A.2d 398; Mass. Ann. Laws ch. 231, par. 85 (Michie/Law. Co-op. 1974); *Melendres v. Soales* (1981), 105 Mich. App. 73, 306 N.W.2d 399; *Iepson v. Noren* (Minn. 1981), 308 N.W.2d 812; *Yarbrough v. Phipps* (Miss. 1973), 285 So. 2d 788; *Abernathy v. Eline Oil Field Services, Inc.* (Mont. 1982), 650 P.2d 772; *Bolduc v. Crain* (1962), 104 N.H. 163, 181 A.2d 641; *Meistrich v. Casino Arena Attractions, Inc.* (1959), 31 N.J. 44, 155 A.2d 90; *Williamson v. Smith* (1971), 83 N.M. 336, 491 P.2d 1147; N.Y. Civ. Prac. Law sec. 1411 (McKinney 1976); *Wentz v. Deseth* (N.D. 1974), 221 N.W. 2d 101; *Hirschbach v. Cincinnati Gas & Electric Co.* (1983), 6 Ohio St. 3d 206, 452 N.E.2d 326; *Minor v. Zidell Trust* (Okla. 1980), 618 P.2d 392; *Thompson v. Weaver* (1977), 277 Or. 299, 560 P.2d 620; *Rutter v. Northeastern Beaver County School District* (1981), 496 Pa. 590, 437 A.2d 1198; *Farley v. M.M. Cattle Co.* (Tex. 1975), 529 S.W.2d 751; *Meese v. Brigham Young University* (Utah 1981), 639 P.2d 720; *Sunday v. Stratton Corp.* (1978), 136 Vt. 293, 390 A.2d 398; *Lyons v. Redding Construction Co.* (1973), 83 Wash. 2d 86, 515 P.2d 821; *McConville v. State Farm Mutual Automobile Insurance Co.* (1962), 15 Wis. 2d 374, 113 N.W.2d 14; *Barnette v. Doyle* (Wyo. 1981), 622 P.2d 1349.) In sum, plaintiff argues that this court should follow *Coney* and the trend established in other jurisdictions by ruling that implied assumption of risk is no longer a complete bar to recovery in negligence actions.

Before adopting plaintiff's argument, however, it is important that we clarify the scope of this decision. Comparative negligence initially was introduced to ameliorate the harsh results produced by contributory negligence. Therefore, if comparative negligence affects assumption of risk, its impact should be limited to that portion of the doctrine which is functionally similar to contributory negligence. Thus, we do not find that comparative negligence affects express assumption of risk, wherein plaintiff explicitly assumes inherent dangers as well as risks created by defendant's negligence. In addition, we reach the same conclusion with regard to the primary implied assumption of risk, wherein plaintiff knowingly and voluntarily assumes the risks inherent in a particular situation. Since these branches of the assumption of risk doctrine are neither analytically nor functionally similar to contributory negligence, they arguably may be unaffected by comparative fault as amelioration for contributory negligence. We limit our ruling today to secondary implied assumption of risk and consequently hold that this doctrine is necessarily abolished by the introduction of comparative negligence into our jurisprudence. Thus, plaintiff's implied assumption of defendant's negligence will no longer

operate as an absolute bar to recovery in negligence actions. Rather, as *Coney* indicates, plaintiff's assumption of risk will merely aid in the apportionment of damages.

Having so held, we refuse to disturb the verdict below, since it conforms with the conclusions we have reached. We are equally unpersuaded by defendants' arguments concerning our earlier decision as the law of the case. Initially, this argument is flawed, since our 1980 decision did not determine this issue, but merely raised the possibility of assumption of risk as an absolute defense. Further, an issue may be re-examined in a subsequent appeal if, during the intervening period, a higher court has announced contrary law. (*Hofmann v. Hofmann* (1984), 125 Ill. App. 3d 548, 466 N.E.2d 598.) Since our decision, the supreme court has introduced comparative fault (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886) and extended that concept to assumption of risk in product liability actions (*Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197). Thus, a higher court has announced contrary law. Accordingly, defendants' law of the case argument fails under these facts.

We similarly reject defendants' contention that the trial court improperly granted a motion *in limine* which precluded defendants' use of the words "assumption of risk" and "assumed the risk." Defendants argue that the motion effectively and improperly restricted the presentation of their case. A motion *in limine* precluding the admission of evidence at trial should be employed with caution as it may unduly restrict the opposing party's presentation of its case. (*Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 416 N.E.2d 268.) Furthermore, an *in limine* order which precludes the opponent from presenting a valid defense is an abuse of discretion by the court. (*Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 899-900, 394 N.E.2d 825; Cleary & Graham, Illinois Evidence sec. 103.9, at 23-24 (4th ed. 1984).) Here, however, it has been determined that assumption of risk was not a valid defense to defendants' negligence. Furthermore, the trial court limited its order to the preclusion of specific words rather than an entire theory. Thus, since the order neither precluded evidence nor prevented the presentation of any theory or defense, the order was proper and not an abuse of discretion.

Finally, we believe the trial court was correct in refusing to instruct the jury concerning assumption of risk. Defendants argue that the presence of some evidence of the theory in the record justified the instruction. (See, *e.g., Yakstis v. William J. Diestelhorst Co.* (1978), 61 Ill. App. 3d 833, 840-41, 378 N.E.2d 591.) Given our deter-

mination concerning the assumption-of-risk defense, defendants' argument is extremely weak. In addition, refusal to give a tendered jury instruction is not reversible error if the subsequent jury verdict is within the range. of evidence considered by the jury. (*Board of Library Trustees v. Fidelity & Deposit Co.* (1981), 101 Ill. App. 3d 1141, 429 N.E.2d 203.) Here, it is undisputed that the verdict was a reasonable inference based on the evidence presented. Furthermore, our own perusal of the record reinforces this conclusion. Thus, the court's refusal to give defendants' instruction was, at most, harmless error.

## II

Defendants' second major contention is that the trial court abused its discretion in allowing Timothy Mahoney to testify as an expert witness for the plaintiff, since he had neither played professional golf nor prepared the Midlothian course for the tournament. Mahoney, however, had been a member of Midlothian for 20 years as well as an active golfer for 40 years. Consequently, the trial court allowed Mahoney to testify as an expert concerning the negligent design of the Midlothian tournament course. Defendants maintain, however, that this testimony was improper since it merely related to matters of general common knowledge.

■ A witness whose knowledge is based upon practical experience is no less an expert than one possessing particular academic or scientific knowledge. (*Robinson v. Greeley & Hansen* (1983), 114 Ill. App. 3d 720, 449 N.E.2d 250.) Thus, Mahoney's amateur status does not detract from his ability to testify as an expert in this situation. Additionally, expert testimony may involve general knowledge of a particular subject if it will aid the trier of fact in understanding the issues. (*Stanley v. Board of Education* (1973), 9 Ill. App. 3d 963, 293 N.E.2d 417.) Finally, the qualification of witnesses is a discretionary matter which will not be disturbed absent a clear abuse of discretion. (*Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 462 N.E.2d 645.) In this situation, there can be no question that the trial court's decision in this matter was well within this standard. Thus, defendants' contention here is rejected.

## III

■ Defendants' final contention is that the cumulative effects of the court's ruling and the improper closing arguments made by plaintiff's counsel resulted in a jury verdict tainted with passion and prejudice. With respect to the evidentiary errors alleged, defendants specif-

ically complain of the following instances: (1) plaintiff's display of her eye injury before the jury; (2) the testimony of plaintiff's opthalmologist concerning possible rather than actual progressive deterioration; (3) the testimony of a tournament participant concerning the hitting of spectators by himself and other professional players; (4) testimony that the concession tent had been planned for another location; and (5) the refusal to admit defense testimony from evidence deposition. In assessing these charges, we initially note that it is not error to allow a plaintiff to display injuries to a jury. (See generally *Burnett v. Caho* (1972), 7 Ill. App. 3d 266, 285 N.E.2d 619.) Further, the proper test here is whether prejudicial error existed in the trial as a whole (*Hall v. Kaplan* (1970), 127 Ill. App. 2d 336, 262 N.E.2d 265) since the parties are entitled to a fair trial, not a perfect one. (*Reidelberger v. Highland Body Shop, Inc.* (1979), 79 Ill. App. 3d 1138, 399 N.E.2d 247.) Finally, the admission of evidence is a discretionary matter which will not be reversed absent clear abuse. (*Tripp v. Bureau Service Co.* (1978), 62 Ill. App. 3d 998, 379 N.E.2d 324.) We therefore conclude that the evidentiary rulings, neither singly nor cumulatively, rise to the level of abuse required for reversible error.

With regard to closing arguments, defendants maintain that plaintiff's counsel stressed the wealth and power of the golf world as a business enterprise as well as its obligation to protect paying spectators. Here, we need not determine whether defendants' argument has merit, since defendants' failure to object at the time of the argument constitutes a waiver of any error. (*Village of Park Forest v. Walker* (1976), 64 Ill. 2d 286, 356 N.E.2d 42.) Thus, no reversible error can be found here.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ and PINCHAM, JJ., concur.