**Dixie L. HANDY and Kenneth L. Handy, Appellees,**

v.

**UNITED STATES of America, Appellant.**

**No. 88-1108.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 19, 1988.

Decided Feb. 16, 1989.

Robert C. Dopf, Asst. U.S. Atty., Des Moines, Iowa, for appellant.

Glenn F. Ruud, Rock Island, Ill., for appellees.

Before HEANEY * and FAGG, Circuit Judges, and HENLEY, Senior Circuit Judge.

HEANEY, Circuit Judge.

The United States Government appeals from a decision of the district court of the Southern District of Iowa. That court found the government 75% liable for injuries resulting to Dixie Handy when she fell while walking on land owned by the United States and operated by the Army Corps of Engineers. The court awarded Dixie Handy the sum of $20,285.06 and Kenneth Handy, Dixie's husband, the sum of $750.00.[1] We affirm.

Dixie Handy fell while camping with her family in an area known as the Thompson Causeway public use area which is within the State of Illinois. Members of the Handy family were on their way home from a camping vacation. They reached the Thompson Causeway in the early evening and paid $4.00 for a campsite located on the northernmost part of the island near the swimming area. The sky was still light when the camping party arrived and prepared their campsite. After the tents were pitched, Dixie Handy, who had consumed several beers, and her son went swimming. After swimming, the two gathered their clothing and walked back to the campsite. Near their van at the campsite, Dixie Handy fell when her feet became entangled in a wire clothing hanger, striking her jaw on a railroad tie. She broke her jaw in several places and has two two-inch scars on her face.

The trial court made several findings: The wire clothing hanger was the proximate cause of Handy's injuries. This hanger was left by earlier campers. Park rangers had a specific duty to inspect the campsite daily. The hanger was there for a sufficient length of time so that in the exercise of ordinary care the rangers should have found it. Dixie Handy had both temporary and permanent injuries.

## I. DUTY

The government argues that under applicable Illinois law the United States owes Dixie Handy only the duty to maintain the premises in a reasonably safe condition, and that Handy failed to establish that an unreasonably dangerous condition existed, citing to *Olinger v. Great Atlantic and Pacific Tea Co.*, 21 Ill.2d 469, 173 N.E.2d 443, 445 (1961). While the government concedes that the district court correctly noted that the owner of property owes a duty to a business invitee to exercise ordinary care in maintaining the premises in a reasonably safe condition, it urges that the district court failed to properly analyze or determine whether the premises in question in fact were in an unreasonably dangerous condition by virtue of the presence of the wire hanger. Continuing, the

---

* The Honorable Gerald W. Heaney assumed senior status on December 31, 1988.

1. The amounts of damages are not contested.

government insists that as a matter of law a wire hanger in a campsite cannot in and of itself give rise to an unreasonably dangerous condition. In response, the Handys argue that Illinois law does not require them to prove that an unreasonably dangerous condition existed—just that the premises were unsafe, given the uses and activities anticipated. Secondly, they argue that, even if the unreasonably dangerous condition standard is the appropriate standard of care, such a condition existed.

 It is clear that in coming to judgment the district court relied upon *Olinger*, as do the parties, and while the trial court might well have expanded its discussion of case law and the legal standard, here it was not required to do so. This was an area of the park with frequent traffic but no lighting. A wire hanger is not one of the hidden hazards that a camper might expect to find in this campground. *See Kimbar v. Estis*, 1 N.Y.2d 399, 153 N.Y. S.2d 197, 198, 135 N.E.2d 708, 709 (1956) (there is a duty to light a common way if harm of some peculiar nature is possible). These findings are not clearly erroneous and no error of law appears.

## II. BREACH

The district court found that the Handys established that the government had constructive notice of the hanger because the hanger must have been left by the campsite's earlier occupant. The government argues that this finding is flawed because there is no evidence that the earlier campers left the site before either the maintenance contractor or the park ranger inspected the campsite. In addition, the government argues that the Handys' testimony that the hanger was located near the van in combination with the fact that none of the members of the Handy party saw the hanger, despite its location, is evidence that the hanger only fell to that site after the Handys arrived. Finally, the government argues that no constructive notice existed because of the commendable job the Corps did in keeping the campsite clean; thus, it is impossible for the hanger to have been on the campsite for a sufficient period of time to constitute notice.

Again, we do not agree with the government that there was insufficient evidence to support the district court's finding or that this finding is clearly erroneous. The government's theory depends to a certain extent on the premise that any earlier occupant would have left after 4:00 in the afternoon when the park ranger makes an inspection, when it is just as likely that the earlier occupant left before 4:00. Regardless of the time that the earlier occupant left the site, the burden of requiring an inspection attuned to the departure and arrival of campers is not too onerous. This does not mean constant patrol—it does mean, however, that park officials may be negligent in failing to assure that all campsites are free of hidden dangers before renting the sites to campers. In addition, the district court's finding is bolstered by the fact that no one in the Handy party brought wire hangers on the camping trip. Finally, the amount of traffic by the Handy party at the campsite does little to negate the court's finding. In large part, this traffic was at the back of the van towards the center of the campsite rather than at the side of the van where the hanger was located. There is more than enough evidence to support the court's finding that the government had constructive notice of the presence of the hanger.

## III. ASSUMPTION OF RISK

 The government challenges the district court's finding that the doctrine of assumption of risk does not apply to the facts of this case. Assumption of risk is still a defense under Illinois law, even though the state is a comparative fault state. *Duffy v. Midlothian Country Club*, 135 Ill.App.3d 429, 90 Ill.Dec. 237, 481 N.E. 2d 1037 (1985). The aspect of this defense that still applies in a comparative fault state is when the plaintiff has assumed the known risks inherent in a particular activity. *Id.*, 90 Ill.Dec. at 241, 481 N.E.2d at 1041. The government asserts that this defense applies because Dixie Handy, as an

experienced camper, assumed the risk of injury by walking in an unlit camping area at night with her arms full of clothing after consuming alcoholic beverages. We disagree. The pertinent risk to be assumed was the hidden risk of the wire hanger. This risk, however, is not inherent in camping and is not governed by *Duffy*. The risks associated with walking with her arms full of clothing after consuming alcohol go to the issue of the plaintiff's negligence in a comparative fault state. *Id.* On that point, the district court did find Dixie Handy 25% negligent. The defense of assumption of risk does not apply to the facts of this case.

## IV. CONCLUSION

Because of the foregoing reasons, we affirm the district court's decision awarding the Handys damages.

FAGG, Circuit Judge, dissenting.

Although the court takes the position "that park officials may be negligent in failing to assure that all campsites are free of hidden dangers," *ante* at 1152, Illinois law does not require the Government to act as an insurer of the safety of those who use its parks, *see Perminas v. Montgomery Ward & Co.*, 60 Ill.2d 469, 328 N.E.2d 290, 294 (1975). In my view, the Handys failed to prove the Government had constructive knowledge of the hanger's presence on the campsite, and the district court's finding to the contrary is clearly erroneous. Thus, I would reverse the district court.